Carolyn D. (Burden) CASTERLINE,
Appellant,

v.

Walter J. BURDEN, Appellee.

No. 19340.

Court of Civil Appeals of Texas,
Dallas.

Dec. 14, 1977.

C. Edward Fowler, Jr., Bailey, Williams, Westfall, Lee & Fowler, Dallas, for appellant.

Charles O. Shields, M. Troy Murrell, Anderson, Henley, Shields & Miller, Dallas, for appellee.

ROBERTSON, Justice.

Walter J. Burden moved under § 14.-08(c)(2) of the Texas Family Code to modify the amount of his weekly child support obligation owed to the children of his former marriage to Carolyn D. Casterline. Upon trial to the court, judgment was rendered for Burden, and the child support obligation was reduced. Carolyn Casterline now appeals from that order. We affirm.

The initial question on the appeal is whether the trial court abused its discretion in reducing the amount of Burden's weekly child support payments. If we conclude that the court properly reduced the payments, we must then decide whether the court erred in making the reduction retroactive to the date of the change in circumstances, and whether the award of attorney's fees is supported by the evidence. Finally, we must determine whether the exclusion of Mrs. Casterline's husband from the courtroom under Rule 267 of the Texas Rules of Civil Procedure was reversible error.

### Reduction of the Obligation

The Domestic Relations Court had previously set Burden's child support obligation at $65 per week for each of his two children. After a hearing on the motion to modify, however, the payments were reduced to $25 per week for each child. In support of this order, the trial court filed findings of fact and conclusions of law, in which it found that Burden was financially unable to pay the previously ordered amounts. Mrs. Casterline argues that this finding is not supported by the evidence. Alternatively, she contends that since the evidence shows that Burden incurred the income reduction voluntarily, the trial court abused its discretion in reducing the obligation. We cannot accept these arguments.

The evidence supports the finding of financial inability to meet support payments. At the time of the first decree, Burden had an income of approximately $680 per month as a salesman. His wife at that time, Mrs. Annette Burden, had income from separate property of approximately $12,000 per year. After rendition of this decree, however, Burden's earnings decreased substantially. His sales job was terminated, and he ultimately accepted a position with the estate of his late father at a salary of $100 per week. This was a material and substantial change in Burden's income, and supports the trial court's finding of Burden's current inability to pay the sums set forth in the first decree. Although Mrs. Casterline urges that the court should also have considered Burden's ability to borrow as a part of his earning potential, we conclude that, as related to one's financial ability to pay prospective child support, borrowed funds cannot be considered "income." As used in Texas law, the term "income" ordinarily means the "gain which proceeds from property, labor or business." *Houston Belt & Terminal Ry. Co. v. Clark,* 122 S.W.2d 356, 358 (Tex.Civ.App.—Austin, 1938 *aff'd*) 135 Tex. 388, 143 S.W.2d 373 (1940). By their very nature, borrowed

funds are not a "gain" in themselves, for the act of borrowing contemplates not only repayment of the principal sum, but also payment of interest charges.

■ We recognize that the ability to borrow is a relevant factor in determining one's ability to pay delinquent support in an application for writ of habeas corpus. *See Ex parte Rohleder,* 424 S.W.2d 891 (Tex. 1967); *Ex parte Hennig,* Doc. No. 19444 (Tex.Civ.App.—Dallas 1977, no writ) (not yet reported); *Ex parte Hart,* 524 S.W.2d 365 (Tex.Civ.App.—Dallas 1975, no writ). However, the issue in a contempt habeas corpus proceeding is the ability to pay *delinquent* support which has already accrued, and not the modification of *prospective* support. If one lacks sufficient income to pay prospective support, it would be illogical to assume that one has sufficient income to repay a loan secured to meet the support obligation. Oppressive and unreasonable support obligations which arise due to a material change in circumstances are precisely the ill that § 14.08(c)(2) of the Family Code was designed to cure, and the right to modify a prior order would be substantially frustrated if one were required, as a prerequisite to relief, to borrow funds to pay prospective support. Such a requirement would merely substitute one oppressive obligation for another, further impair the supporting party's ability to meet future payments, and invite contempt citations when those payments become delinquent. Viewed in this light, it is to a party's advantage to move for modification at the *earliest opportunity* following a material change of circumstances, thereby avoiding potential imprisonment for contempt and the more stringent test of financial ability employed in contempt proceedings.

■ Mrs. Casterline next argues that even if the evidence supports the trial court's finding of Burden's inability to pay the support ordered in the original decree, the trial court abused its discretion in reducing the obligation. She argues that by quitting his higher-paying sales job and accepting less lucrative employment, Burden voluntarily reduced his income, and that

such a voluntary income reduction is an improper basis for reducing support payments. We do not agree. Since there is no evidence that the income reduction was the product of a design to reduce the child support payments, it is immaterial that Burden's problems may have been voluntarily incurred. *Anderson v. Anderson,* 503 S.W.2d 124, 126 (Tex.Civ.App.—Corpus Christi 1973, no writ); *McSween v. McSween,* 472 S.W.2d 307, 310 (Tex.Civ. App.—San Antonio 1971, no writ). The present case is distinguishable from *Curtis v. Curtis,* 448 S.W.2d 242 (Tex.Civ.App.—Austin 1969, no writ), for in that case, the father voluntarily left his job and made no effort to secure other employment. In this case, however, Burden attempted to secure other employment and later accepted a new job, although at a lower salary. The circumstances of this case do not approach the total disregard of responsibility exemplified in *Curtis.*

### Retroactive Application

■ The trial court ordered that Burden's child support obligation be reduced retroactively to the date he changed jobs, some four months after the motion to modify was filed. Mrs. Casterline argues that this retroactive reduction should only be effective prospectively from the date of the order for modification. We disagree. Section 14.08(c)(2) expressly states that "an order providing for support of a child may be modified only as to obligations accruing subsequent to the motion to modify." Under this section, the trial court is empowered to retroactively modify support obligations which have accrued since the filing of the motion to modify. Since the present order only reduces obligations which have accrued *after* the motion to modify was filed, we hold that it was properly rendered under § 14.08(c)(2).

Contrary to Mrs. Casterline's arguments, this case is not controlled by our supreme court's holdings in *Gard v. Gard,* 150 Tex. 347, 241 S.W.2d 618 (1951) and *Rumpf v. Rumpf,* 150 Tex. 475, 242 S.W.2d 416 (1951). Those cases hold that foreign support and

alimony decrees can only be modified prospectively, the cases dealt with foreign decrees under the law of the foreign jurisdiction where the right to payment either vested upon the due date or had been reduced to judgment before suit in Texas. In those cases, retroactive modification was precluded by the full faith and credit clause of the United States Constitution. This principle does not apply here, however, since no foreign decree is involved in this case. Our legislature has not chosen to preclude retroactive modification by granting final judgment status to past due payments without judicial intervention. Had the legislature intended such a result, there would have been no need to enact § 14.09(c) of the Family Code, which provides for reduction of delinquent support payments to judgment upon motion of the custodial party. If the past due obligations had been reduced to judgment under § 14.09(c), modification of that final judgment might have been precluded as an impermissible collateral attack in the judgment; absent such a judgment, however, we hold that a reduction may be ordered retroactively to the filing of the motion to modify.

■ Mrs. Casterline's final argument on this point is that the trial court's $3,083 judgment for delinquent support was contrary to a stipulation of the parties that the accumulated arrearage was $6,123. We do not agree. According to the record, the stipulation only related to the sum which would be due if the motion for retroactive modification was overruled. Once the motion was granted, however, and the court decided to make the reduction effective from April 1, 1976, the court could then determine that judgment for only $3,083 in arrearage was appropriate. This could be done by taking judicial notice of the fact that there were 38 weeks between April 1, 1976 and December 27, 1976. The court could then determine that, having set the child support at $25 per week per child, it had effected a support reduction of $80 per week. By multiplying those figures, the court then could establish the total reduction for the intervening period at $3,040, which, when subtracted from the stipulated

$6,123, leaves an arrearage of $3,083. Accordingly, we conclude that pursuant to the stipulation and the retroactive reduction, the court entered judgment for the correct amount of arrearage.

### Attorney's Fees

■ The trial court found that the sum of $2,200 was a reasonable amount of attorney's fees for Burden to contribute toward payment of Mrs. Casterline's attorney's fees, and awarded judgment in that amount to Mrs. Casterline's attorney. Mrs. Casterline argues that the trial court's finding of reasonableness was against the great weight and preponderance of the evidence, and accordingly, that it rendered judgment for an erroneous and insufficient sum. We disagree. The granting of attorney's fees in domestic relations matters rests within the sound discretion of the trial court, and the court's order will not be disturbed unless a clear abuse of discretion is shown. *Clark v. Clark,* 496 S.W.2d 659 (Tex.Civ. App.—Waco 1973, no writ); *Hayes v. Hayes,* 378 S.W.2d 375 (Tex.Civ.App.—Corpus Christi 1964, writ dism'd).

■ Mrs. Casterline's counsel testified that he had expended 144.5 hours in the case, at an hourly rate of $50 per hour, for a total of $7,225. Although there is a sizeable difference between the amount claimed and the sum awarded, a court is not required to award a fee equal to the amount incurred by a party. The opinion testimony of the attorney is not conclusive, *Trevino v. American National Insurance Co.,* 140 Tex. 500, 168 S.W.2d 656, 660 (1943); *McFadden v. Bresler Malls Inc.,* 526 S.W.2d 258, 264 (Tex. Civ.App.—Austin 1975, no writ), and the court may consider a number of factors in making its decision, including the nature, difficulty and importance of the case, *Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155, 160 (1945), the amount of time and money involved, and the benefit derived by the client, *Vaughn v. Gunter,* 458 S.W.2d 523, 528 (Tex.Civ.App.—Dallas 1970, writ ref'd n. r. e.), the responsibility imposed upon counsel, and the skill and expe-

rience needed to perform the services. *United Finance and Thrift Corporation v. Chapman,* 369 S.W.2d 782, 784 (Tex.Civ. App.—Eastland 1963, no writ); *Weatherly v. Longoria,* 292 S.W.2d 139, 141 (Tex.Civ. App.—San Antonio 1956, writ ref'd n. r. e.). Further, in a domestic relations case it is proper to consider the relative conditions and needs of the parties, *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1005 (1950); *Fortenberry v. Fortenberry,* 545 S.W.2d 40, 42 (Tex.Civ.App.—Waco 1976, no writ).

In the present case, there is evidence that some of the fee claimed by Mrs. Casterline's attorney was based upon hours spent inquiring into the estate of Burden's late father. Since the parties were aware that the estate was not subject to distribution during the pendency of this case, it would have been improper to include attorney's fees based upon those services in this award. Even though we might have awarded a different sum, that is not a relevant factor absent a clear abuse of discretion by the trial court. *Hayes v. Hayes, supra,* 378 S.W.2d at 381. Under these circumstances, we conclude that the trial court did not abuse its discretion in awarding a lesser fee than that desired by counsel.

### *Exclusion Under the "Rule"*

◼ As her final contention, Mrs. Casterline argues that the court erred in excluding her husband from the courtroom under Rule 267 of the Texas Rules of Civil Procedure. According to her argument, her husband, although not named as a party, was a party in interest who should not have been excluded. In support of this contention, she cites *Martin v. Burcham,* 203 S.W.2d 807, 811 (Tex.Civ.App.—Ft. Worth 1947, no writ), which held the exclusion of the spouse of a party in a suit affecting the community estate to be reversible error.

The rationale of *Martin* was that when a suit jeopardizes the community estate, both spouses are parties in interest who are exempted from exclusion by the language of Rule 267. According to *Martin,* any exclusion must be reversible error because it would be difficult to demonstrate that the

exclusion probably harmed the remaining spouse. Despite these problems of proof, we are not convinced that exclusion of a party's spouse from the courtroom is necessarily reversible, rather than harmless error. We recognize that Mrs. Casterline's husband did testify regarding his income, and that Burden's counsel argued that the trial court should consider his income as a factor in reducing Burden's support obligation. However, since there is sufficient evidence to support a reduction even without considering Mrs. Casterline's testimony regarding his contribution to community income, we conclude that his absence from the courtroom did not prejudice his community interest or Mrs. Casterline's case. Appellate courts are not permitted to reverse a judgment unless the court's error was reasonably calculated to cause, and probably did cause an improper judgment. *Holmes v. J. C. Penney Co.,* 382 S.W.2d 472 (Tex. 1964). Accordingly, we hold that in a case concerning modification of child support, as distinguished from one directly affecting the community estate, the exclusion of a party's spouse under Rule 267 is not reversible error unless prejudice is shown.

Affirmed.