Marcia D. WARNER, Appellant,

v.

Roger W. WARNER, Appellee.

No. 18454.

Court of Civil Appeals of Texas, Fort Worth.

April 16, 1981.

Rehearing Denied May 21, 1981.

---

Kelsey, Wood, Gregory, Duncan & Holt, and D. Michael Gregory, Denton, for appellant.

Royce Coleman, Denton, for appellee.

## OPINION

MASSEY, Chief Justice.

The Warners are parents of three children, Brad, Shawn, and Stacey. In 1975 their marriage was dissolved in the State of Colorado. Pursuant to the decree of divorce, custody of the children was awarded to the mother, with the father awarded right of temporary custody of each child for one month during the summer and such other times as the parents might mutually agree, with possibility of the extension of the periods of the father's temporary custody in the summer specifically provided. There was further provision for the father's temporary custody during vacation periods throughout the school year conditioned upon mutual consent of the parties and desires and welfare of each child.

On the matter of child support to be paid by the father to the mother there was provision that he pay, beginning September 1, 1974, $100.00 for each child per month for a

total monthly support payment of $300.00, to become due on the first day of each month, unless and until modified by the order of the Court *or until the children become emancipated*; however, the father was not obligated to pay support to the mother for a child for the time in which he had temporary custody of such child.

Under the terms of the Colorado decree, since child support was awarded for each child individually by specific time period, there is possible mathematical calculation of the monetary obligation of the father at any particular time, upon determination of the total amount owed for each child considered as an individual, and arrears, if any. In the event of dispute over such amount owed (for each child at any particular time), however, there would be the necessity to hear evidence and resolve any differences therein. (For example, the total amount per year owed by the father to the mother would be reduced $100.00 for each full month in which the father might have had temporary custody of such child, or if more or less than one month, the proportionate computation thereby made necessary.)

Additionally to be observed is that the father's obligation of payment would be terminated for any particular child who might become emancipated. In the event of any dispute as to emancipation or the date on which it might have occurred there would be necessity to receive evidence and resolve differences in like manner. The objective, in any event, would be to determine the balancing of accounts, and, if the father be found in arrears, to decree the amount, if any, then owing by him to the mother for the support of each child.

By transfer of the Colorado decree to the district court of Denton County, and subsequent confirmation by court order, jurisdiction of the district court of Denton County became vested. Therein, with appearance of both the Warners, were all occurrences with which we are concerned.

The period of time in which child support is contested is from July of 1976 through May of 1979, when the matter was heard in the Denton court. Brad reached 18 years of age on July 1, 1976; Shawn reached 18 years of age on January 12, 1978. Support for Stacey was contested in respect only to the court's calculation of credits for periods during which the father was her temporary custodian, and of credits for costs due to changes in travel arrangements.

Believing that his child support obligations ceased when the children reached 18 years of age due to Texas law, the father ceased making payments to their mother as each of the older children turned 18, though he thereafter provided financial support by direct payment to them. Under Colorado law, a person becomes emancipated as a matter of law at the age of 21. Dependent upon circumstances shown, however, emancipation may be established as a matter of fact prior to that age.

The trial court correctly determined that Colorado laws applies. Upon the evidence presented, it factually determined that Brad had become emancipated but that Shawn, as of the time of the hearing, had not yet become emancipated. (Stacey has not yet become emancipated.) Further rulings were made concerning the father's entitlement to have, as applied to each of the children, a reduction in the amount of child support due for periods in which he had temporary custody.

■ The mother contends the court erred in finding that Brad became emancipated as a matter of fact September 1, 1976 (around two months after he turned 18). Charged is that there was no evidence to support the finding, and, alternatively, that the finding was against the greater weight and preponderance of the evidence. At the time the court found Brad had become emancipated, he had begun a six-year course of study leading to a medical degree. His schooling was in a different city from either parent. He visited both during academic holidays, and both parents contributed to his financial support and his career

planning. (Prior to the time he became 18, he had lived at times with his father, although no modification of the divorce decree was obtained.) There is adequate evidence to support the trial court's holding that Brad Warner became emancipated September 1, 1976, and the fact finding to that effect was not contrary to the greater weight and preponderance of the evidence.

Originally the mother contended error in the trial court's allowance of credit of $500.00 for support paid directly to the second son, Shawn, for the period following his 18th birthday in January of 1978 until graduation from high school the following June. Evidence showed that this money was delivered by Shawn to his mother immediately upon receipt. This point of error was abandoned upon oral submission.

█ Upon graduation from high school, Shawn became employed fulltime while he continued to live with his mother and sister. As soon as he became employed fulltime, his father ceased to pay child support for him. Although Shawn was so employed, other evidence such as independence in decision-making, providing for himself, and planning his work and future studies, contributed to the trial court's determination that Shawn was not emancipated. The trial court evaluated all of the evidence and we hold that therefrom was justification and support for the trial court's holding, though the evidence could have supported a finding that emancipation either factually had or had not occurred. The two cross-points of error by the father in complaint thereof are therefore overruled. Both cross-points contend error of the court by its failure to find Shawn's factual emancipation.

█ The mother also contends that the trial court erred in granting the father $100.00 credit per month for certain periods when Shawn and Stacey were in temporary custody of their father. The mother testified that one of Stacey's summer vacations with her father had been extended without the mother having agreed thereto. The father testified that he made reductions in child support only in connection with the summer visits (temporary custody times), payment of taxes on a joint trust fund, or changes in travel costs. The evidence supports the finding of the court that credits taken by the father were justified reductions.

The mother's remaining point of error is her complaint that the trial court erred in rendering judgment for attorney's fees of only $300.00, when the findings of fact were to the effect that a reasonable fee for her attorney was $6,500.00. She also contends the $6,500.00 established the amount of attorney's fees to which she was entitled as a matter of law.

Authorization for the award of attorney's fees is found in Tex. Family Code Ann. sec. 11.18(a) *Costs* (1975), which reads:

"(a) In any proceeding under this subtitle, the court may award costs as in other civil cases. Reasonable attorney's fees may be taxed as costs, and may be ordered paid directly to the attorney, who may enforce the order for fees in his own name."

We note that the trial court made finding of fact number 14, which reads:

"The attorney for Marcia D. Warner is Michael Gregory and the law firm of Kelsey, Wood, Gregory & Banks. The *value* of the legal services rendered through the trial on the merits by Michael Gregory and the law firm of Kelsey, Wood, Gregory & Banks is $4,000.00. The *value* of services that would be necessary for the appeal of this case to the Court of Civil Appeals would be $1,500.00. The *value* of the legal services to be rendered should this case be appealed from the Court of Civil Appeals to the Texas Supreme Court would be an additional $1,000.00.

"Based upon the nature of this case and the time expended by the law firm of Kelsey, Wood, Gregory & Banks, the amount of $4,000.00 would be a reasonable *charge* for the services rendered

through the trial on the merits. The amount of $1,500.00 for services rendered for an appeal to the Court of Civil Appeals and the amount of $1,000.00 for legal services rendered for an appeal to the Texas Supreme Court would be a reasonable *charge*." (Emphasis added.)

Related thereto is the trial court's conclusion of law number 12:

"Michael Gregory of the lawfirm (sic) of Kelsey, Wood, Gregory & Banks shall have a judgment against Roger W. Warner in the amount of $300.00, representing a minimum amount of attorney's fees considering the nature of the case."

■ The award of costs, or costs and attorney's fees, is discretionary with the court under the Texas Family Code. The fee, if awarded, must be supported by evidence. *Great American Reserve Insurance Co. v. Britton*, 406 S.W.2d 901 (Tex.1966). There is ample evidence to support the award of $300.00, indeed even to support an even greater amount as reflected by the court's findings of fact. The focus of the question on appeal is the discrepancy between the $300.00 awarded and the several thousand found by the trial court to be reasonable value and charges.

■ The granting of attorney's fees in domestic relations matters rests within the sound discretion of the trial court, and the trial court's order will not be disturbed unless a clear abuse of discretion is shown. As the court noted in *Casterline v. Burden*, 560 S.W.2d 499, 502 (Tex.Civ.App.—Dallas 1977, no writ), "[a]lthough there is a sizeable difference between the amount claimed and the sum awarded, a court is not required to award a fee equal to the amount incurred by a party." That court continued with a review of relevant factors to be considered in determining the amount of attorney's fees to be awarded, if any. Those factors include: nature, difficulty and importance of case; amount of time and money involved; benefit derived by client; responsibility imposed upon counsel;

and in domestic relations cases, relative conditions and needs of those involved. See also *McFadden v. Bresler Malls, Inc.*, 526 S.W.2d 258 (Tex.Civ.App.—Austin 1975, no writ; appeal after remand, 548 S.W.2d 789, 1977, no writ), in which there is discussion of Supreme Court holdings that the opinion testimony of an attorney is not conclusive, and the trier of facts must take into consideration the facts in relation to the services. (526 S.W.2d at 264.) We make our own observation that the "value" of services performed, if performed necessarily, is a different thing from "value" of services unnecessarily performed. In the case before us there is no finding that all the services of the attorney for the mother were necessarily incurred.

■ The trial court considered extensive evidence on the question of attorney's fees. This is not a case in which the reasonableness of attorney's fees was a matter entrusted to the trial judge's discretion or where he adjudicated reasonableness on judicial knowledge without benefit of evidence. The evidence included testimony from the mother's attorney concerning the basis for his charges, testimony from another attorney familiar with hourly rates in cases of this kind in the locale in which the case was tried, and testimony from the father's attorney which disputed the amount of work required though not the reasonableness of the hourly charge itself. This latter testimony included the division of work required into two portions, one for work prior to a certain hearing and one for work required after that hearing. These two amounts were $250.00 and $350.00, thus totaling $600.00, which the attorney testified he would have charged if he had been representing Mrs. Warner. He then attempted to clarify or possibly retract his earlier testimony and reiterated that attorney's fees should not be assessed against his client.

Assuming propriety of any award of attorney's fees in this case (and in this connection we note that on the appeal the

father has not complained of the amount awarded), the trial judge had the duty to evaluate the evidence presented. As the trier of fact he was entitled to give the weight he thought proper to each item of evidence presented, including all testimony, and to the considerations detailed in *Casterline* and *McFadden, supra.* As the court stated in *Harlow v. Southern Farm Bureau Casualty Ins. Co.*, 439 S.W.2d 365, 369 (Tex. Civ.App.—Austin 1969, writ ref'd n. r. e.):

> "While the record contains uncontradicted testimony by an attorney witness as to what the value of the services were worth, opinion evidence as to the correct amount of attorney's fees should be, even though uncontradicted, is not binding and conclusive on the trial court. *Head v. Hargrave*, 105 U.S. 45, 26 L.Ed. 1028; 5 American Jurisprudence, Attorney's (sic) at Law, Section 192. We hold that the trial court did not abuse his discretion here."

In addition to criteria relation to attorney's fees in other cases, in a domestic relations case it is proper to consider the relative conditions and needs of the parties. *Casterline, supra*, 560 S.W.2d at 503, citing others.

In this case, neither party was clearly successful. The emancipation of two children was contested; the trial court held one to be emancipated but the other not.

The original nature of the action, one for contempt of court for failure to pay child support, materially changed at the trial; the father was not held in contempt, rather did he end up at termination with a judgment against him for indebtedness deemed owing on the Colorado judgment in 1975. He makes no contention by cross-point that he was not liable at all for any attorney's fees, nor does he complain of the amount thereof adjudged against him.

The trial court was under no obligation to allow any attorney's fees in any amount. The $300.00 award could not constitute ground for reversal because it was for such a minimal amount.

Each of the points of error, as well as the counter points, has been considered; all are overruled.

Judgment of the trial court is affirmed.