**Paul Wendell KILLPACK, Appellant,**

v.

**Sharon Kathryn Lynn KILLPACK, Appellee.**

**No. 18411.**

Court of Civil Appeals of Texas, Fort Worth.

May 7, 1981.

Rehearing Denied June 4, 1981.

Roger D. Bush, Dallas, for appellant.

Gray, Whitten & Loveless and Curtis M. Loveless, Howard Watt, Denton, for appellee.

## OPINION

MASSEY, Chief Justice.

On November 9, 1979, Sharon Lynn Killpack and Paul Wendell Killpack were granted a divorce at the conclusion of a five-day jury trial. By the judgment Mrs. Killpack was granted custody (named managing conservator) of the parties' minor child, and Killpack was named possessory conservator. A subsequent hearing was held by the court, principally in regard to property division. The judgment was thereafter signed and entered.

Killpack has appealed, and he complains of the granting of the divorce, division of community property, custody provisions, and award of attorneys' fees. By her cross-point Mrs. Killpack has appealed the $5,500 attorneys' fees (including for appeal) granted her by the court; she seeks to obtain recovery based upon $14,800 the jury found as reasonable attorneys' fees.

We affirm.

Killpack has raised seven points of error. By one he complains of error in reopening testimony and taking evidence after rendition of the verdict and dismissal of the jury. This did occur after the jury was discharged. Matters on which the court at that time heard additional testimony concerned visitation, child support, and property division. There was no error by holding the additional hearing. Thereat the court, though subject only to advice of the jury on these topics, did not determine any issue in

such a way as to conflict with any prior finding or to the prejudice of Killpack.

Killpack also contends error in the award to Mrs. Killpack of a one-half interest in real property in Iowa purchased in her husband's name during the marriage. In spite of having two opportunities, first at the trial and again at the hearing in December, Killpack failed to carry his burden of proving what portion, if any, of the Iowa land was his separate property. By the judgment the court clearly identified and described the Iowa property and stated that interests therein acquired by Killpack had been by purchase or inheritance. The award to Mrs. Killpack was for "fifty percent (50%) interest in and to any part of said Iowa property *purchased* by PAUL WENDELL KILLPACK or SHARON KATHRYN LYNN KILLPACK after July 13, 1974, and before December 7, 1979" (date of the hearing held after the jury was discharged). (Emphasis ours.)

The land is sufficiently identified so that a partition suit, if desired, might be brought in Iowa. Thereby the court might readily allocate by acreage the equivalent of the interest awarded to Mrs. Killpack by the Texas judgment. Killpack was the party in possession of the facts and documents to prove the separate nature of the land in question, or as applied to any undivided interest therein, the character of that which was in fact his separate property. Reversible error could not have resulted.

Killpack also contends that the court erred in excluding testimony. That excluded concerned generational patterns of child abuse and (incompetent) opinion evidence concerning complaint that Mrs. Killpack had abused her child. From the record as a whole, we find no merit in the contention. It is overruled.

Killpack's fourth point of error contends individual bias and prejudice by the trial court and that by reason thereof he was denied a fair trial both on jury and nonjury issues. The specific remarks claimed to exhibit prejudice fall short, when taken in context and when considered cumulatively,

of holding harmful error to have resulted. We hold no merit in the point.

Killpack also complains that the trial court erred in finding a percentage equity share in the parties' homestead rather than awarding Mrs. Killpack a specific dollar share. Killpack received a 55% interest and Mrs. Killpack received a 45% interest. There was no dispute as to the community nature of the property or of the fact that part of the equity in the home had been obtained with funds from the sale of a house in which Killpack owned a separate property interest. There was no error in use of percentage amounts. (The percentage approach was the form in which Killpack had requested a special issue.)

Although the trial court was not required to do so, it delayed appointment of a receiver for 90 days in order to allow the parties an opportunity to arrive at a settlement before the house was put on the market, though by the judgment a receiver was designated and the property ordered to be sold. Killpack was allowed to continue to live in the house until such sale, if and when it occurred.

Killpack's final point of error complains of the failure to submit to the jury the issue of whether he, if named possessory conservator of their son (as he was), should have the duty of religious and moral training, and power to consent to marriage, to military enlistment, and to medical, psychiatric and surgical treatment. We hold the complaint without merit. These duties are specifically allotted to the managing conservator by Texas Family Code Ann. § 14.02 (1980) "Rights, Privileges, Duties, and Powers of Managing Conservator." To name one party managing conservator and then remove the vital part of that conservatorship would be illogical. Furthermore, Texas Family Code Ann. § 11.13 (1980) "Jury" provides:

"(b) The court may not enter a decree that contravenes the verdict of the jury, except with respect to the issues of the specific terms and conditions of access to the child, support of the child, and the rights, privileges, duties, and powers of

conservators, on which issues the verdict, if any, is advisory only."

Even if the court had complied with Killpack's request and submitted the question to the jury, it would not be bound to follow the jury's recommendations. The ultimate duty lies with the court, whose decision must control so long as there is no abuse of discretion. No point complains of abuse of discretion.

■ By an antecedent point of error, Killpack has attacked the award of attorneys' fees for Mrs. Killpack in the amount of $5,500 with a proviso for remittitur of $4,000 should he not appeal. He charges this to be speculative and unconstitutional because it chills his right to appeal. Related thereto is Mrs. Killpack's single crosspoint, which asserts that the trial court erred in failing to follow the jury's findings that $14,800 was reasonable attorneys' fee for her attorneys for the trial of this case.

In a distribution of property in the context of divorce the trial court has many considerations, with the award of attorneys' fees being only one part thereof. When there is a view of the "whole picture", it is obvious that the court, deeming $14,800 excessive, cut out $9,300 in any event; and, should Killpack not appeal, cut out $13,300, leaving Killpack's obligation to pay attorneys' fees at $1,500 in the trial court, plus $4,000 as additional for services of Mrs. Killpack's attorney in defending against any appeal. While somewhat different from the ordinary judgment (an attorney's services in the trial court is ordinarily deemed greater in value than his services in handling the appeal), here there is no reversible error. We deem this obvious by appropriate view of the "whole picture".

■ We revert to consideration on Mrs. Killpack's cross-point in complaint of the award of attorneys' fees less than the jury finding of $14,800. We have recently examined obligations for attorneys' fees by the Texas Family Code. See *Warner v. Warner*, 615 S.W.2d 904 (Tex.Civ.App.— Fort Worth 1981). The trial court was not bound to award anything as attorneys' fees. That being true, Mrs. Killpack could not

have suffered prejudice occasioning reversible error when she was awarded that which was specified in the judgment.

All points of error have been severally considered and are overruled.

Judgment is affirmed.