**Nancy McSWEEN, Appellant,**

v.

**John McSWEEN, Appellee.**

**No. 15016.**

Court of Civil Appeals of Texas, San Antonio.

Oct. 20, 1971.

Corbin L. Snow, Jr., San Antonio, for appellant.

Baskin, Casseb, Gilliland, Rodgers & Robertson, San Antonio, for appellee.

CADENA, Justice.

This is an appeal by Nancy McSween from an order of a District Court of Bexar County reducing the amount to be paid by appellee, John McSween, appellant's former husband, for the support of the two minor children of the parties from $500.00 per month to $320.00 per month.

The parties were divorced on May 26, 1970. In connection with the divorce proceedings the parties entered into an agreement concerning the division of the community estate. Under this agreement, which was approved by the court and made a part of the divorce decree, Mrs. McSween received the equity of the parties, about $42,000.00, in their home (described in the inventory as having a value of $87,000.00); a 1968 Lincoln Continental automobile; 19 shares of IBM (Industrial Business Machines Corporation) stock which, at the time of the hearing of the application to reduce child support payments had a value of about $5,457.00; $1,500.00 in cash; and all household furniture, except for a guest bedroom suite and a leather stool. Mr. McSween received 134 shares of IBM stock which, at the time of the hearing in this proceeding had a value of about $43,000.00; 200 shares of stock in Alaskan Airlines, the value of which is not disclosed by the record; all interest in any retirement benefits to which he might be entitled as a result of his employment with IBM; the cash surrender values (undisclosed) of any insurance policies the parties might have had at the time of the divorce; a 1969 Oldsmobile automobile; and a 1955 Jeep.

Mrs. McSween was to assume and pay the outstanding indebtedness on the house, while Mr. McSween was charged with the obligation of paying all community indebtedness, including federal income taxes on the income and capital gains realized by both parties up to and including the date of the divorce.

In the agreement, Mr. McSween agreed to pay to Mrs. McSween, for the support

and maintenance of the two minor female children of the parties, aged 10 and 7 at the time of the divorce, the sum of $500.00 per month until the youngest of such children became 21 years of age, and to pay all costs of sending each of the children to college for at least four years. The divorce decree incorporates the provisions of the agreement concerning child support, reciting that Mr. McSween shall pay the sum of $500.00 per month until the youngest of the children becomes 21 "or until further Orders of the Court."

In his application for reduction of the child support payments, Mr. McSween alleged that there had been a material change in his financial condition since the entry of the divorce decree in that in the interim between the entry of the decree and the filing of the application, his income had decreased from $42,000.00 per year to $14,400.00 per year. Because of these changed conditions, Mr. McSween asked that his child support obligation be reduced to the sum of $250.00 per month. Although the record does not contain any answer by Mrs. McSween to this application, she appeared at the hearing, represented by counsel and testified.

The uncontradicted testimony of Mr. McSween shows that during the seven-month period intervening between the entry of the divorce decree and the filing of his application for reduction of child support payments, his income had decreased from $42,000.00 per year to $14,400.00. In June of 1970, shortly after the divorce, he voluntarily left the employment of IBM, where his salary over the preceding three years had averaged $42,000.00 per year because, in order to retain such employment, he would have to agree to be transferred from San Antonio. During the preceding 11 years of his employment with IBM he had been transferred seven times, and he was unwilling to move from San Antonio. He received no retirement benefits on termination of this employment, but did receive a $500.00 bonus and received commissions which were due him.

A few weeks after leaving IBM, Mr. McSween secured employment with Steves Industries in San Antonio which would have yielded an annual income of about $27,000.00. According to his testimony, "The arrangements worked out at first, and then they didn't," and after a short period, he voluntarily terminated this employment. Shortly thereafter he obtained his present employment with Glasser's Art Gallery with the responsibility of starting up what he described as a small new company. He is paid the sum of $1,200.00 per month, or $14,400.00 annually, but from this amount he must pay all expenses connected with the operation of the business. He receives no part of the profits, if any.

Since the divorce, it has been necessary for him to sell 41 shares of the IBM stock in order to pay off community debts existing at the time of the divorce and in order to live. Seventy shares of the stock are pledged as security for an indebtedness in the sum of $5,000.00 in connection with a marginal account at a stock brokerage firm. Apparently, this indebtedness existed at the time of the divorce.

There is no testimony with reference to the value of the Alaskan Airlines stock, nor does the record indicate whether Mr. McSween still owns it.

Mrs. McSween testified that she works 20 hours a week for a wage of $2.50 per hour. She is unable to do work which would require her to be away from home for 40 hours each week because she must take the children to school every morning and pick them up every afternoon. She has made no effort to join any "car pool" because the children are dismissed from school at different hours. She cannot afford to employ a person to take care of the children, and does not believe that she could afford to do so even if she obtained full-time employment. She is willing to work forty hours a week if she is allowed to do part of the work at home so that she may take her children to school, pick them up in the afternoon and be with them after

they return from school, but she has been unable to find that type of employment.

Since the divorce she has made the monthly payments, each in the sum of $413.00 on the home which was awarded to her as her separate property. In addition, she must make payments of $30.00 per month on the swimming pool. Since the divorce it has been necessary for her to borrow $4,200.00, and the shares of IBM stock which she received are pledged as security for such loan.

She listed the house for sale prior to the entry of the divorce decree and is still attempting to sell it. She is presently negotiating with a prospective purchaser and is hopeful of selling it for about $60,000.00.

It is clear that the financial condition of both parties has deteriorated since the divorce. Mrs. McSween contends that the trial court abused its discretion in reducing the child support payments because the decrease in Mr. McSween's income is "of his own design" and "was fraudulently concealed from" Mrs. McSween until the property settlement and agreement for child support was negotiated. Even if such concealment would be relevant, we find no evidence to support Mrs. McSween's contention of fraudulent concealment. She testified that she had heard rumors that he was going to terminate his employment with IBM.

■ While it is true that Mr. McSween voluntarily left two previous employments which netted him more income, there is nothing to suggest that he did so with any "design" to reduce the child support payments. We cannot say that the trial court abused its discretion in refusing to find that Mr. McSween deliberately reduced his annual earnings $27,600.00 in furtherance of a sinister scheme to reduce his child support payments by $3,000.00 a year, if his application had been granted in full, or by $2,160.00 per year, which is the amount he will save under the order entered in this case.

Mrs. McSween includes in her brief the statement, "Mr. McSween has also remarried and assumed the support of two (2) additional children while at the same time requesting his own children's support be decreased." There is nothing in the record to support the charge that Mr. McSween has remarried or otherwise assumed the support of additional children.

■ Our Supreme Court has formulated the applicable rule as follows: "In determining the duty of the husband to supply necessaries to his children, before or after divorce, it is to be borne in mind that his duty corresponds to his financial ability, having due regard to all his lawful obligations, which may include those assumed to another wife and to other children, and in no event is he liable for food, clothing, attention, or education other than such as is suitable to his and their circumstances in life." Gully v. Gully, 111 Tex. 233, 231 S. W. 97, 100 (1921). There is no apparent reason for applying a different rule to a judicial determination of the periodic payments which a father must make for the support of his children following a divorce.

In affirming the judgment below, we adopt the language of the Dallas Court of Civil Appeals in McAfee v. McAfee, 258 S.W.2d 824, 825–826 (1953, no writ): "Amount of support in these cases is always dependent, not only upon needs of the child, but upon ability of the parents to contribute; and here the father has testified to a substantial reduction in income. He has remarried, which is of course his right. And we are not unmindful, in these inflationary times, of the mounting expense incident to the proper rearing of [children]. But amount of support * * * turns upon the varying financial circumstances of the responsible parent; and considering the wide latitude of discretion vested in the divorce court * * * we [are] duty bound to affirm the instant order of reduction."

The question of the continuing contractual liability of Mr. McSween under the terms of the property settlement and child support agreement is not before us.

The judgment of the trial court is affirmed.