The **STATE BAR OF TEXAS,** Appellant,

v.

Karen A. **LERNER,** Appellee.

No. 01–90–00720–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

July 1, 1993.

Rehearing Denied July 22, 1993.

Linda A. Acevedo, Austin, for appellant.

Karen A. Lerner, Houston, for appellee.

Before COHEN, DUGGAN and WILSON, JJ.

## OPINION

COHEN, Justice.

After a nonjury trial of this disciplinary action against attorney Karen A. Lerner, the judge found she did not violate the State Bar's disciplinary rules and rendered a take-nothing judgment in her favor. We affirm.

In a single point of error, the State Bar asserts the unchallenged findings of fact conclusively show Lerner violated Disciplinary Rules 1–102(A)(4) and 1–102(A)(6).[1]

The trial judge made the following findings of fact and conclusions of law:

---

1. DR 1–102. Misconduct
 (A) A lawyer shall not:
 ....
 (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
 ....
 (6) Engage in any other conduct that adversely reflects upon his fitness to practice law.

SUPREME COURT OF TEXAS, CODE OF PROFESSIONAL RESPONSIBILITY, DR 1–102(A)(4) & 1–102(A)(6) (1984), *repealed by* Order of the Supreme Court of Texas dated October 17, 1989, effective January 1, 1990.

**498**

### FINDINGS OF FACT

1. In or around June of 1987 Respondent [Lerner] was the attorney of record for the Plaintiff, Thaddeus E. Cartwright (hereinafter called "Cartwright") and James A. Williams (hereinafter called "Williams") was the attorney of record for Defendants H.W. Kilpatrick III, M.D. (hereinafter called "Kilpatrick"), in a cause numbered 83–386–31, styled Thaddeus E. Cartwright v. H.W. Kilpatrick III, M.D., et al; In the 295th Judicial District Court of Harris County, Texas (hereinafter called "Cartwright lawsuit").

2. On or about June 3, 1987, Williams sent Respondent a letter (hereinafter called "June 3, 1987, letter") offering on behalf of Kilpatrick to settle the Cartwright lawsuit as to Kilpatrick for the payment to Cartwright of One Hundred Thousand and no/100 ($100,000.00) Dollars. Respondent communicated to Williams that the Cartwright lawsuit, as to Kilpatrick, could be settled on the terms outlined in the June 3, 1987, letter.

3. An original and four (4) copies each of a Release and Order of Dismissal were transmitted by Williams to the Respondent by letter dated June 15, 1987. On June 24, 1987, the settlement check was hand delivered to Respondent together with a letter appertaining thereto (hereinafter called "June 24, 1987, letter").

4. On June 25, 1987, Respondent negotiated the settlement check which she knew or should have known was tendered to her as full and complete settlement of the Cartwright lawsuit as to defendant Kilpatrick by depositing same in Respondent's trust account. Respondent had, prior to such negotiation, neither secured Cartwright's execution of the release, nor obtained approval and entry of the judgment, nor forwarded all papers to Williams, thereby failing to comply with the terms of the June 24, 1987, letter.

5. Respondent subsequently decided against settling the Cartwright suit as to defendant Kilpatrick in the fashion previously agreed upon, and, having so decided, failed to return the proceeds of the settlement check to Williams or Kilpatrick.

6. Respondent's failure to either return the proceeds or the executed papers forced Williams to attend additional hearings seeking dismissal or continuance of the Cartwright lawsuit.

7. Respondent actively opposed a motion for continuance sought by Williams after Respondent misled Williams into believing that the Cartwright lawsuit had been settled.

8. After negotiating the settlement check, Respondent failed to inform Williams that she was not settling the Cartwright lawsuit until Williams had inquired on two (2) separate occasions into the whereabouts of the release.

9. Respondent failed to transmit the executed release to Williams until [on] or about September 11, 1987.

### CONCLUSIONS OF LAW

1. An escrow agreement was formed by the offer made in the June 3, 1987, letter and the acceptance thereof communicated by Respondent to Williams, the terms of which were set forth in the June 24, 1987, letter.

2. Respondent breached the escrow agreement by negotiating the settlement check without first securing Cartwright's execution of the release, obtaining approval and entry of the judgment and forwarding all papers to Williams.

3. Respondent did not violate Disciplinary Rules 1–102(A)(4), 1–102(A)(6) or 7–101(A)(1).

 Findings of fact are like a jury's verdict upon special issues. *IFG Leasing Co. v. Ellis,* 748 S.W.2d 564, 566 (Tex. App.—Houston [1st Dist.] 1988, no writ). Here, neither party contends the evidence does not support the findings of fact. Therefore, we are bound by the findings of fact. *Wade v. Anderson,* 602 S.W.2d 347, 349 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.). We must independently evaluate the legal conclusions drawn from the facts found. *Spiller v. Woodard,* 809 S.W.2d 624, 627 (Tex.App.—Houston [1st

Dist.] 1991, no writ). The State Bar does not contest the judge's conclusion that there was no violation of DR 7–101(A)(1).

Based on the particular facts of this case, we conclude the trial judge was not required to find that Lerner engaged in dishonesty, fraud, deceit, or misrepresentation, or conduct that adversely reflects upon her fitness to practice law. Rather, he could have reasonably concluded that Lerner's conduct was not done with intentional dishonesty in order to defraud or deceive anyone.

Lerner received the check on June 24, 1987 and deposited it the next day into her trust account. Lerner, her secretary, and her client all testified the client signed the release in June 1987, but Lerner does not contest the trial judge's finding that she negotiated the check on June 25, before the client signed the release. She believed then that the case was settled. She deposited the check into her trust account in order to avoid leaving such a valuable negotiable instrument in her office, which had been burglarized a few months before. Lerner testified that she had never before received a settlement document prohibiting her from "negotiating" a check. She incorrectly understood the term "negotiate" to mean distributing the funds to herself or to her client, rather than depositing the check into a trust account. She testified that defendants usually gave her one of two types of instructions regarding settlements, either one that prohibited the disbursement of funds to the plaintiff before the release was signed or one that prohibited depositing the check until the release was signed. She thought the safest place for the check was in her trust account.

It is undisputed that during the two and one-half months Lerner held the money, the defendant never requested that she return it. Lerner testified she would have returned the money, if requested to do so. In mid-September 1987, the case was settled for $100,000.00, as the parties originally intended.

On July 10, 1987, Williams wrote Lerner asking her to return to him the signed settlement documents as soon as possible because his client "gets a little nervous when a check is out and a release is not in hand. . . ." Lerner responded by letter on July 14, apologizing for her delay. She wrote that the money was in her trust account and had not been disbursed; that she was holding Mr. Cartwright's signed release; that Mr. Cartwright was reconsidering the settlement in light of a cross-action filed by another defendant at about the same time or just after the exchange of the settlement documents; that the newly filed cross-action was an important development that might significantly affect her client's ultimate total recovery in light of the various rules governing contribution among joint tortfeasors; and finally, that Williams had her "absolute professional and ethical assurance that no monies will be disbursed prior to placing in the United States mail the signed release."

■ Lerner does not contest the trial judge's findings that she 1) failed to comply with the terms of the June 24, 1987 settlement letter, 2) failed to return the money to Williams, 3) forced Williams to attend additional hearings, 4) misled Williams into believing that the Cartwright lawsuit had been settled, and 5) failed to inform Williams she was not settling the lawsuit until he inquired on two separate occasions about the release. The trial judge obviously believed that Lerner's conduct was wrong, but not that Lerner acted dishonestly, fraudulently, or deceitfully, as required by DR 1–102(A)(4). Such findings would obviously require intentional misconduct, but Lerner's July 14 letter informed Mr. Williams of all the pertinent facts surrounding her handling of the money and her refusal to return the settlement documents. The trial judge could have concluded that this disclosure by Lerner was inconsistent with the State Bar's allegations of intentional dishonesty done to defraud, deceive, or mislead.

■ The allegations that Lerner's conduct adversely reflects upon her fitness to practice law, DR 1–102(A)(6), are judged by a different standard. For that conduct, intent is not essential. Negligent conduct alone may adversely reflect upon an attor-

**500**

ney's fitness to practice law. Thus, lack of dishonest intent would not necessarily exonerate Lerner from liability for violating DR 1–102(A)(6). We nevertheless conclude that the trial judge could have reasonably found that Lerner's conduct did not reflect adversely on her fitness to practice law. The trial judge could have been influenced by evidence that 1) Mr. Williams never requested the return of the money, 2) the money was placed in Lerner's trust account, a procedure properly used to safeguard funds from loss, 3) the money was never improperly disbursed to Lerner, to her client, or to anyone else, 4) putting the money in a trust account was more protective of the defendant's interest than leaving such a valuable check in an office that had been recently burglarized, and 5) Lerner wrote Williams four days after his letter requesting the return of the signed settlement documents and approximately three weeks after receiving the money, informing him fully and accurately what she had done with it and why. The trial judge severely criticized Lerner's conduct, but he could have reasonably concluded, as he apparently did, that it showed neither the significant moral failure alleged nor a degree of carelessness or neglect that either threatened or caused significant damage to anyone.

We hold that the trial judge was not outside the range of reasonable discretion in deciding that the misconduct he found did not reach the level of showing unfitness to practice law.

The point of error is overruled.

The judgment is affirmed.