In the Interest of Amanda Danielle DAVIS, Brooke Marie Davis, and Demi Darie Davis.

No. 06–00–00039–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 11, 2000.

Decided Oct. 12, 2000.

Melissa A. Charles, Longview, for appellant.

Todd Tefteller, Tefteller & Pelaia, Gilmer, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice DONALD R. ROSS.

Leland Davis appeals from the denial of his motion to modify possessory arrangements in a child custody order and the denial of his request to lower child support payments. He contends that the trial court abused its discretion by: 1) failing to comply with a mandatory statute; 2) failing to make additional or amended findings of fact and conclusions of law; 3) finding no material and substantial changes justifying a change in the possession order; 4) finding the divorce decree workable and appropriate, because such finding was against the great weight and preponderance of the evidence; 5) failing to consider his election under the Family Code for extending Wednesday visitation; and 6) failing to set child support within the statutory guidelines.

Leland and Connie Davis (Gage) were divorced on October 7, 1994. They had four daughters. Since then, they have both remarried, and two of the daughters are over the age of eighteen years. At the time of the hearing, the other two daughters were fifteen and six years old. The 1994 divorce decree provided that Leland was to pay Connie $1,000.00 per month in child support. In 1999, Leland's employer, the Stroh's Brewery in Longview, closed its doors and he lost his job. Shortly thereafter, he sought and received a reduction in child support payments to $500.00 per month. He is presently receiving unemployment benefits amounting to $1,243.66 per month.

The decree also contained a possession order which provided that he was to return the children after weekend visitation at six o'clock on Sunday night, and at eight o'clock on Wednesday night. Leland sought a change in visitation so that his daughters could attend catechism classes on Sunday evening and be returned by him to school on Monday morning, and so that he would be permitted to keep the children overnight on Wednesday and return them to school on Thursday morning.

Because of recent amendments to the Family Code, the Wednesday visitation change sought by Leland as possessory conservator is mandatory in original or modification orders entered after 1997, unless the court finds such visitation is "not in the best interest of the child." Tex.Fam. Code Ann. § 153.312(a)(2) (Vernon Supp. 2000). Also, the Sunday night visitation change sought by Leland was likewise made mandatory, on the election of the possessory conservator, in original or modification orders rendered after 1997, except that statute does not contain the "best interest of the child" language. Tex.Fam. Code Ann. § 153.317(2) (Vernon Supp. 2000).

Leland first contends that the trial court abused its discretion by failing to apply the language of Section 153.317(2) and modify the visitation provision of the divorce decree to allow him to surrender his children to school on Monday morning after a weekend visitation rather than at six o'clock on Sunday night. The statute provides the present language of a standard possession order and is presumed to be in the best interest of the child.[1] The former version of the statute provided that the visitation *may* expressly provide for the Monday morning surrender. The present version provides that the visitation *must* expressly provide such language on request of the possessory conservator.

In a similar contention, he argues that the court abused its discretion by failing to apply the language of Section 153.312(a)(2) and allow him to surrender his children to school on Thursday morning after a Wednesday night visitation. That statute also contains the mandatory language described above.

Both of those statutes are based on the same premise. They require the court to allow the type of surrender sought by Leland on the rendition of either an original order or a modification order. In this case, the trial court expressly refused to enter an order modifying possession, but did enter a modification order changing child support, deleting dependency exemption language, and ordering payment for a child support arrearage. It is not clear from the statute whether any type of modification would suffice to require the application of the mandatory language, or whether it would be applied only if the court modified the visitation provisions of the prior order.

■ Our application of the amended statute is complicated by the general language of the Family Code stating that a court may modify a possession order only if the circumstances of the child or parent has substantially and materially changed since the date of the order, or if the order has become unworkable or inappropriate. Tex.Fam.Code Ann. § 156.301(1), (2) (Vernon Supp.2000). Neither the general modification statute nor the amended statutes acknowledge the existence of the other. Thus, the question is whether a party seeking a modified visitation order must first comply with Section 156.301 before the court is required to apply the mandatory election language of Section 153.317 and order surrender of a child after visitation as provided under the present version of the standard possession statutes.

No court has addressed this question. In *Weldon v. Weldon,* 968 S.W.2d 515, 518 (Tex.App.—Texarkana 1998, no pet.), we reviewed a similar claim involving the prior version of a companion section of the

---

1. Tex Fam.Code Ann § 153.252 (Vernon 1996).

code. In that case we found that the "may" language made the decision to grant the requested election discretionary and that the trial court did not err by applying the "material and substantial change" standard in making its decision under Section 156.301.

We also held, however, that where modification of an existing order was sought, the movant was required to meet one of the four requirements of Section 156.301, and if successful, "the trial court may then consider the guidelines for possession of and access to a child under Chapter 153." That concept underpins any attempt to modify a possession or visitation order. Thus, in order to read these statutory provisions in harmony with each other, we conclude that a movant must first meet the requirements of Section 156.301. If the movant does so successfully and makes the requisite election, then the trial court is required to provide visitation as set out by Section 153.317. We conclude that the trial court did not err by analyzing the application of the law in this manner.

We now turn to Leland's evidentiary claims. Leland further contends that the trial court committed reversible error by failing to make additional or amended findings of fact and conclusions of law on the specific issues of whether there was a "material and substantial change in circumstances" or whether the existing visitation order was "unworkable and inappropriate under the existing circumstances." He argues that if Section 156.301 applies, and such findings are necessary, then the court erred by failing to make such findings.

■ Findings of fact entered in a case tried to the court are of the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points,* 806 S.W.2d 791, 794 (Tex.1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury ques-

tion. *In re W.S.,* 899 S.W.2d 772, 775 (Tex.App.—Fort Worth 1995, no writ); *Arena v. Arena,* 822 S.W.2d 645, 650 (Tex. App.—Fort Worth 1991, no writ).

■ If a proper request for findings is made, as in this case, the trial court's duty to file findings and conclusions is mandatory, and the failure to respond when all requests have been properly made is presumed harmful unless the record before the appellate court affirmatively shows that the complaining party has suffered no injury. *Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768, 772 (Tex.1989).

In this case, the trial court made findings. It then declined to make amended or additional findings as requested by appellant. Davis complains at length that the court erred by refusing to make the additional findings. His discussion is focused on his argument that the failure to make such findings make it impossible for him to determine why the court concluded that it would not be in the best interest of the child to follow the language of a standard visitation order and instead chose to deviate from the terms of a standard visitation order.

■ The Family Code does not define "finding of fact." Accordingly, we construe the phrase by use of the particular meaning it has acquired under TEX. R.CIV.P. 296. *See* TEX.GOV'T CODE ANN. § 311.011 (Vernon 1998). That particular meaning refers to the ultimate and determinative fact questions rather than evidentiary fact findings. *See De Llano v. Moran,* 160 Tex. 490, 333 S.W.2d 359, 360 (1960); *Montgomery Indep. Sch. Dist. v. Davis,* 994 S.W.2d 435, 438 (Tex.App.— Beaumont 1999, pet. granted); *Posner v. Dallas County Child Welfare,* 784 S.W.2d 585, 587 (Tex.App.—Eastland 1990, writ denied). Findings of fact are equivalent to a jury's verdict. *See State Bar of Texas v. Lerner,* 859 S.W.2d 496, 498 (Tex.App.— Houston [1st Dist.] 1993, no writ).

■ Thus, the court must make findings on each material issue raised by the pleadings and evidence, but not on evidentiary issues. Findings are required only when they relate to ultimate or controlling issues. *Roberts v. Roberts*, 999 S.W.2d 424, 434 (Tex.App.—El Paso 1999, no pet.); *Loomis Int'l, Inc. v. Rathburn*, 698 S.W.2d 465, 467 (Tex.App.—Corpus Christi 1985, no writ); *Dura–Stilts Co. v. Zachry*, 697 S.W.2d 658, 661 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Lettieri v. Lettieri*, 654 S.W.2d 554, 556 (Tex.App.—Fort Worth 1983, writ dism'd).

In this case, the remaining requests are not ultimate or controlling issues, but are evidentiary questions. The trial court did not err by failing to make the requested additional findings.

■ We now turn to Leland's contentions that the evidence does not support the verdict. The court found in amended finding number 11 that there were no material and substantial changes in the circumstances of the children and that the present order is workable and appropriate. An appeal from a trial court's decision to modify a decree or order regarding joint conservatorship involves an abuse of discretion standard. *Weldon*, 968 S.W.2d at 518; *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex.App.—Austin 1997, no pet.). Under an abuse of discretion standard, legal and factual insufficiency are not independent grounds for asserting error but are, on the other hand, relevant factors in assessing whether the trial court abused its discretion. *Gray v. Gray*, 971 S.W.2d 212, 213 (Tex.App.—Beaumont 1998, no pet.); *Weldon*, 968 S.W.2d at 518; *D.R. v. J.A.R.*, 894 S.W.2d 91, 95 (Tex.App.—Fort Worth 1995, writ denied); *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, no writ).

■ In this case, the evidence shows that when the divorce decree was rendered in 1994, all four children were minors, with the youngest being one year old. At the time of this hearing, two girls had reached their majority, and the youngest was six years old and enrolled in kindergarten. Both parents had remarried. Leland sought the modification for two reasons, both of which involved church activities. He stated that he was the head usher for Sunday night mass, which took place through the six o'clock hour. The evidence showed that during the time of their marriage, both parents had attended the Catholic church and raised their children with religious instruction through that institution.

The evidence indicates, however, that after their divorce the mother stopped attending church. Thus, the father sought this change so that the children could attend church with him on Sunday night, and so that the older girl could attend confirmation classes on Sunday afternoons. The mother's response consisted of a suggestion that there were plenty of masses to attend and that she wanted the six-year-old back by six so that she could get ready for school the next day.

Although the hearing turned out to be a modification hearing, it was originally called as a contempt proceeding against Leland for failing to return the children by six o'clock on Sunday nights. Davis was not held in contempt.

The question is whether the trial court's determination that there was no change in circumstances was an abuse of discretion. Based on the evidence tendered at the brief hearing, we conclude that it was. A change in the number of children under the control of the visitation order is itself a substantial change, as is the natural change that occurs between age one and age six, and the concomitant change in the scope of activities and the needs of the children involved. *See Voros v. Turnage*, 856 S.W.2d 759, 762 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Randle v. Randle*, 700 S.W.2d 314, 316–17 (Tex.App.—Houston [1st Dist.] 1985, no writ).

In at least one case, an appellate court has approved the holding of a trial court which modified visitation based on only

one change in the circumstances of the child. The trial court had determined that the change in the age of the child warranted a modification of the former order. *Horne v. Harwell*, 533 S.W.2d 450, 452 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.).

In this case, we have the inverse situation. This trial court necessarily acknowledged that the children had grown older, with the infant having entered kindergarten and the older girl having reached an age of importance in the exercise of religious beliefs, and that two children of the marriage were no longer under the scope of the prior visitation order. The mother did not dispute the father's statements that she was disinterested in providing religious training for their children, but it is not clear that this was a situation differing from the time when visitation was initially set.

The question before this Court is whether from this information the trial court erred by concluding that no material change had occurred. We conclude that it did. These changes are not de minimus, nor are they minor in any regard. As pointed out by the Austin Court of Appeals in 1976, the change in a child from a babe in arms or toddler to a school-aged child in itself is sufficient to show the material change necessary to support modification, and we conclude that under these facts the trial court abused its discretion by failing to find a substantial and material change in circumstances. Based on this conclusion, and because of the mandatory language of Section 153.317, we render judgment ordering the change in Sunday night visitation in accordance with the present requirements of the Family Code.

■ This does not, however, end our review. The portion of the Family Code on which Leland relies to support his request for extended Wednesday night visitation with his youngest child has an additional phrase which does not appear in the statute applied above. In Section 153.312(a)(2), the statute provides that the possessory conservator may elect to retain the child on Wednesday night and return her to school on Thursday mornings instead of at eight o'clock on Wednesday night. That section, however, provides that the court may decline to enforce the election if the court finds that "visitation under this subdivision is not in the best interest of the child." The court so found in this case.

Under that standard, we note that there is evidence of the youngest child's routine, and also of the difficulty currently encountered by the father in driving the two-hour round trip between their dwellings during the middle of the school week for a two-hour visitation period. Even in an overnight visit, that length of time traveling for a young child would be excessive and disruptive to the child's school week. In light of these factors, we conclude that it is within the court's discretion to decide that to allow the overnight midweek visit would not be in the best interest of the child.

■ Leland next contends that the trial court erred by failing to set child support within the guidelines set by statute. The evidence shows that while married to Connie, Leland worked irregularly as a general contractor building houses and that he later was employed by Stroh's Brewery in Longview. Under the 1994 divorce decree, child support was set (for all four children) at $1,000.00 per month.[2] A temporary order was entered in November 1998, in which the parties acknowledged that only three children remained at home, that Leland had been laid off from the brewery, and that the parties agreed to reduce child support payments to $500.00 per month.[3]

2. Leland did not fully comply with the ordered payments, and at this hearing he was ordered to begin payment of an arrearage in the amount of $6,013.98. He does not contest that order.

3. Counsel for Connie makes much of the fact that Leland's layoff from the brewery was

At the time of this hearing, there is no question that Leland's employment with the brewery was permanently terminated, that he was receiving unemployment assistance in the amount of $287.00 per week, or $1,243.66 per month, and that he had no other job. He testified that he was living on his unemployment check and that he was planning to seek training in other areas. He also testified that he had worked in construction for years and did not want to continue to work in that area.

Connie argues that Leland was actually working with his new wife in her construction business and that he was effectively an unpaid member of her workforce. The testimony shows that his present spouse had worked in the construction or remodeling business for several years prior to their marriage.

The court found that he was intentionally underemployed and intentionally unemployed. Because of that conclusion, the court ordered child support to remain at the $500.00 per month level previously ordered rather than reducing the child support to $262.52 per month, which would be the guidelines support level for his stated income for two children. The Texas Supreme Court's child support guidelines permit a court to consider the earning potential of a voluntarily unemployed or underemployed parent. *Stocker v. Magera*, 807 S.W.2d 753, 755 n. 3 (Tex.App.—Texarkana 1990, writ denied); *Anderson v. Anderson*, 767 S.W.2d 163, 165 (Tex.App.—Houston [14th Dist.] 1988, no writ).

■ The trial court is accorded broad discretion in setting and modifying child support payments and, absent a clear abuse of discretion, the trial court's order will not be disturbed on appeal. *See Stocker*, 807 S.W.2d at 754. If a parent's actual income is significantly less than he could earn because of his intentional unemployment or underemployment, the court may instead apply the child support guidelines to his earning potential. Tex.Fam. Code Ann. § 154.066 (Vernon 1996). This has the effect of preventing a parent from evading child support by treating the parent's earning potential as an element of his net resources.

■ The Family Code does not define "intentional underemployment or unemployment," and the concept has not been handled with complete consistency by Texas appellate courts. It appears that an important factor in reviewing underemployment cases in the context of child support is the question of whether the reduction in income was effectuated with a design to reduce child support payments. *DuBois v. DuBois*, 956 S.W.2d 607, 610 (Tex.App.—Tyler 1997, no writ).[4] Under that formulation, in order for a court to find that a parent is intentionally underemployed or unemployed under Tex. Fam.Code Ann. § 154.066, there must be evidence that the parent reduced his income for the purpose of decreasing his child support payments. There is no pre-

only temporary and that he was recalled after being unemployed for only two weeks. Counsel argues that Leland was in bad faith because he had the duty to inform the court of the re-employment and to return his child support to the higher level. Neither the record nor any law cited supports that position. Leland testified, however, that when he obtained the reduction in child support, he believed the layoff was permanent and that he was recalled only because of an explosion at the plant. All parties agree that the plant is now permanently closed.

4. *Citing Starck v. Nelson,* 878 S.W.2d 302, 307 n. 10 (Tex.App.—Corpus Christi 1994, no writ); *Kish v. Kole,* 874 S.W.2d 835, 838–39

(Tex.App.—Beaumont 1994, no writ); *Woodall v. Woodall,* 837 S.W.2d 856, 858 (Tex. App.—Houston [14th Dist.] 1992, no writ); *Casterline v. Burden,* 560 S.W.2d 499, 501 (Tex.Civ.App.—Dallas 1977, no writ); *McSween v. McSween,* 472 S.W.2d 307, 310 (Tex.Civ.App.—San Antonio 1971, no writ). However, these cases do not hold that proof that the obligor reduced his or her income "with a design to reduce the child support payments" is a requirement in determining whether or not that obligor is intentionally underemployed or unemployed. These cases do suggest that such proof is an important factor that the court should consider.

sumption that simply because a parent is no longer as lucratively employed as he was during his marriage, he is intentionally underemployed or unemployed. The requisite intent or lack thereof, however, may be inferred from such circumstances as the parent's education, economic adversities and business reversals, business background, and earning potential.

There was no evidence in the record to support the inference that Leland was intentionally underemployed to avoid his child support responsibilities. A factor that could be read to raise an inference that he had any desire to avoid those responsibilities is found in his prior, unexplained failure to meet all of his child support obligations.

Leland was questioned by the trial court at some length, however, about his involvement with his wife's construction business. At one point, Leland had been engaged in the construction business, but he denied that he was so engaged at the time of this hearing. His wife, however, who the evidence showed had worked in remodeling houses for some years prior to their marriage, was now involved in building new houses. The tenor of the court's questions makes it clear that despite his protestations to the contrary, the court did not believe that Leland was uninvolved in his wife's business and believed that income from that source should have been available.

 Leland testified that he was intentionally unemployed, but that he was planning to use this opportunity provided by his substantial unemployment benefit to pursue schooling and change careers. This does not support an inference that he

remained unemployed in order to avoid his support responsibilities, and further provides the possibility that he might become employed at a higher salary later and thus be able to better support his children. That Leland was laid off from a closing company is not, in and of itself, sufficient evidence to support a finding of intentional underemployment.[5]

It is apparent that the court disbelieved Leland's explanations and did believe that he was actually involved in his wife's business and was thus an unpaid worker for her venture. This conclusion finds some support in Leland's acknowledgment that he was providing encouragement and advice to his wife in her business. He further stated to the court that he was not in the construction business because he was "tired of it" and it did not interest him anymore. We therefore conclude that there is some evidence supporting the court's finding that he was intentionally unemployed or underemployed.

This does not end our inquiry, however. Even though there is some evidence that Leland was intentionally unemployed or underemployed, there was no evidence to support the trial court's implied finding that his earning potential was sufficient to allow the court to calculate his net resources at $2,000.00 per month.[6] There is no evidence of his prior income, or of income that might be attributed to any supposed employment relationship with his wife. There is no evidence of any amount that he might have been able to earn in jobs that he is presently qualified for, nor is there any evidence of the availability of such employment from any source. No evidence of Leland's prior income was pre-

---

5. *But see Terry v. Terry,* 920 S.W.2d 423, 427 (Tex.App.—Houston [1st Dist.] 1996, no writ) (finding proof of intentional unemployment without mention of any intent to avoid payment of child support); *but see also Tenery v. Tenery,* 955 S.W.2d 337, 340 (Tex.App.—San Antonio 1997, no pet.); *In re Striegler,* 915 S.W.2d 629, 640 (Tex.App.—Amarillo 1996, writ denied); *Roosth v. Roosth,* 889 S.W.2d 445, 454 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Giangrosso v. Crosley,* 840 S.W.2d 765, 770 (Tex.App.—Houston [1st Dist.] 1992, no writ).

6. Under the tax charts promulgated by the attorney general, his monthly gross wages would need to be approximately $2,500.00 per month in order to have a net monthly income of $2,000.00.

sented, and no effort was made to provide proof of the amount that he might be able to earn working in some capacity in the construction industry. In short, there is no evidence that he could obtain employment from which he could earn more than his present unemployment check.

Section 154.066 provides that the court may apply the support guidelines to earning potential rather than actual income *if the actual income is significantly less than the obligor could earn.* There is no evidence to show what the obligor could earn under any other scenario. In the absence of such evidence, the statute does not authorize the court to apply earning potential rather than earning reality.

We find that there is neither evidence nor reasonable inferences from the evidence sufficient to support the actions of the trial court. In the absence of any evidence other than pure speculation, we must hold that the trial court clearly abused its discretion when it applied the child support guidelines to a net income of $2,820.00 per month. The point of error is sustained.

We reverse the judgment of the trial court and remand this case for entry of an appropriate order setting child support in accordance with the statutory guidelines. We further render judgment implementing the mandatory Sunday night visitation provision in accordance with Leland's election. In all other respects, the judgment is affirmed.