

# NUMBER 13-14-00032-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF M.K.T. AND B.S.T., MINOR CHILDREN

### On appeal from the 52nd District Court
### of Coryell County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Longoria
### Memorandum Opinion by Justice Rodriguez

Appellant J.T., the father of M.K.T. and B.S.T., appeals from an order modifying the geographical restriction on his children's primary residence.[1]  *See* TEX. FAM. CODE ANN. § 156.101(a)(1) (West, Westlaw through 2015 R.S.).  By five issues, J.T. claims that the trial court abused its discretion in modifying the order because there had not been a

---

[1] We use initials for the family members to protect the child's identity.  *See* TEX. R. APP. P. 9.8; TEX. FAM. CODE ANN. § 109.002(d) (West, Westlaw through 2015 R.S.).

material and substantial change and the modification was not in the children's best interest. We reverse and remand.[2]

## I. BACKGROUND[3]

M.K.T. was born January 26, 2006, and B.S.T. was born December 3, 2007. Proceeding pro se, the parents, J.T. and C.T., divorced in Coryell County, Texas on July 8, 2010. The final decree named the parents as joint managing conservators of the children and, among other things, granted C.T., the mother, "[t]he exclusive right to establish the primary residence of the children within the following geographic area: Coryell County."

In April 2013, C.T. filed a petition to modify the parent-child relationship, and on May 24, 2013, C.T. amended her petition, requesting the following: (1) the removal of the geographic restriction to Coryell County; (2) the modification of the possession order to a standard possession order; and (3) an increase in child support. In support of her geographical modification request, C.T. claimed that "[t]he circumstances of the children, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified" and that the modification "is in the best interest of the children."

---

[2] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through 2015 R.S.).

[3] Following the withdrawal of her appellate counsel, C.T., the children's mother, proceeded pro se. She has not filed a brief to assist us in the resolution of this matter. Without an appellee's brief, we will accept as true the facts J.T. presents if they are supported by the record. *See* TEX. R. APP. P. 38.1(g).

In response, J.T. filed a counter-petition denying that there had "been any material and substantial change in circumstances since the date of divorce." He claimed that "[n]o change ha[d] occurred in anyone's situation." In support of his assertion, J.T. set out that he "liv[ed] in the same house" and that C.T. had "the same job. Neither ha[d] remarried. The children attend[ed] the same school."[4] In the alternative, should the trial court find a material and substantial change of circumstances, J.T. requested that the trial court appoint him "conservator with the right to establish the children's primary residence," award C.T. "possession of the children pursuant to a [s]tandard [p]ossession [o]rder," and order C.T. to pay child support according to the family code guidelines. J.T. asserted that these modifications would be in the best interest of the children.

At the hearing on the petition to modify, C.T. testified, in relevant part, that she "would like to move at least 60 miles" and that the furthest she would want to go was "75 miles away" in order to "better her own position." When asked "what would you say the significant change has been that you need the ability to move now?", C.T. responded, "The prices of everything is rising. I'm stuck at the same rate. There is no advancement. I have been applying. Everything is from Temple on to Georgetown and Round Rock." C.T. agreed that she thought that she had exhausted her ability to move forward in Coryell County. C.T. also explained she had found a job in Georgetown and one in Round Rock that had full benefits. And she had "recently [been] offered an eBay job working at one of their offices in north Austin," a job that started at $14.00 an hour

---

[4] J.T. established these facts at the hearing on C.T.'s petition to modify. The testimony also revealed issues related to J.T.'s health that had not changed since the date of the divorce decree.

with full benefits. According to C.T., members of her family lived "in the Austin, Round Rock area and Pflugerville."[5] She agreed that she was "not seeking to move out of the State of Texas" or "out of the country" and that she would be "okay with a simple geographical restriction in Texas." C.T. also agreed, "at most or even at least . . . a hundred miles would allow [her] to take these [job] opportunities" and "would . . . allow [her] to be around [her] family" and "provide a better school system for [her] children."

The trial court took the matter under advisement and, on December 9, 2013, entered its written order, granting a modification and imposing a geographic restriction to Coryell and adjoining counties, a restriction J.T. claims no one requested. By ordering the modification of the geographical restriction, the order impliedly found that a material and substantial change had occurred and that the modification was in the children's best interest. The trial court denied all other requested relief.

On December 9, 2013, the trial court filed findings of fact and conclusions of law that had been requested by J.T. The court began its findings and conclusions by repeating the procedural history of the case. The trial court explained that it "considered the following facts in determining the material and substantial change and the best interest of the children":

> the Petitioner's testimony regarding her current employment, her employment opportunities, and the effect it has had on her, the Respondent, and the children; the Petitioner's testimony of the educational, health, and leisure opportunities afforded the children by lifting the restriction; both parties' testimony regarding the Respondent's gun possession and use currently versus prior to the Divorce; the Petitioner's testimony of the effects on the Respondent's visitation, communication, and access with the children if the Court lifted the geographic restriction; the Petitioner's

---

[5] C.T.'s brother, Michael Reppert, testified that he lived in Temple, Texas, but had not seen the children "for a while."

4

testimony of the parties' past ability to share duties and responsibilities of the children, and both parties' testimony of the Respondent's involvement with the children.

After setting out relevant propositions of law, the trial court concluded that "[b]ased on the credible evidence presented and the application of the law, the Court finds the children's primary residence should be modified to Coryell and contiguous counties."[6]   Based on this language, the trial court again impliedly found that a material and substantial change had occurred since the date of the rendition of the divorce decree in 2010.   It also impliedly found that the modification was in the best interest of the children.

On December 20, 2013, the trial court made additional findings, some of which were proposed by J.T., some by C.T.   The following findings are those relevant to our review of the trial court's geographic modification:

[J.T.] resides in the same home that he lived in at the time of the divorce.

[C.T.] has the same job she had at the time of the divorce.

The children attend the same school they have attended since prior to the divorce.

[J.T.] was medically retired from the US Army at the time of the divorce and continues to be so.

. . . .

Neither [C.T.] nor [J.T.] have remarried since their divorce from each other.

. . . .

[C.T.] has provided a safe and stable environment for the children since the divorce.

---

[6] The contiguous or adjoining counties to Coryell County include Hamilton, Bosque, Lampasas, McLennan, and Bell.

. . . .

The requested modification of the geographic restriction is fair and equitable to both [J.T.] and [C.T].

The modification would place a minimal if any burden on [C.T.] and [J.T.]'s ability to communicate and share in the care of their children.

The modification would still allow [J.T.] to visit his children on a daily basis if necessary.

The modification would allow [C.T.] a significant ability to expand her employment opportunities.

The employment opportunities offered outside of the previous geographic restriction would significantly increase [C.T.]'s ability to provide for the children.

Affording [C.T.] better work hours and opportunities would be in the best interest of the children.

The modification would allow the children to be closer to their extended family and friends.

. . . .

[J.T.] does not have any close family in Coryell County or any contiguous counties.

. . . .

The modification would not disrupt [C.T.] and [J.T.]'s ability to communicate significant problems or emergencies.

There was significant evidence presented that the children's after-school and extra-curricular activities would not be affected by the modification of geographic restriction.

The modification would allow the children access to a larger variety of extra-curricular and after-school activities.

. . . .

[C.T.] is forced to work longer hours at lower paying jobs as a result of the

6

previous geographic restrictions.

The modification would allow [C.T.] more time with her children as a result of the better opportunities for an expanded geographic restriction.

. . . .

[J.T.] has history of treatment for emotional disorders, including Post Traumatic Stress Disorder.

[J.T.] has a history of "blackouts".

[J.T.] has a machine for Sleep Apnea that he must wear while he sleeps.

[J.T.] continues to suffer from physical disabilities that prevent full range of movement.[7]

This appeal followed.

## II.    DISCUSSION

By his first two issues, J.T. challenges the trial court's implied finding that a material and substantial change had occurred since the 2010 final decree of divorce, warranting a modification of the geographical restriction.   In his fourth issue, J.T. asserts that the trial court abused its discretion when it created a new geographical restriction that neither party pleaded or requested.   And J.T.'s third and fifth issues complain of the trial court's finding that the geographical restriction imposed was in the children's best interest.

## A.    Standard of Review

We reverse a trial court's modification order only when it appears from the record as a whole that the trial court abused its discretion.   *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re C.R.O.*, 96 S.W.3d 442, 446 (Tex. App.—Amarillo 2002, pet.

_____

[7] The trial court also made a number of findings relevant only to the court's best-interest determination, a determination we do not reach because of our disposition of J.T.'s first two issues.   *See id.* at R. 47.1.

7

denied). "Per that standard, we cannot interfere with the decision so long as some evidence of a substantive and probative character supports it and the ruling comports with the law." *In re C.M.G.*, 339 S.W.3d 317, 319 (Tex. App.—Amarillo 2011, no pet.) (citing *In re C.R.O.*, 96 S.W.3d at 447). In other words, we must inquire: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *See In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *see also In re T.W.E.*, 217 S.W.3d 557, 559 (Tex. App.—San Antonio 2006, no pet.) ("An appellant challenging the sufficiency of the evidence must show that the evidence or lack thereof, caused the court to act without reference to any guiding rules or principles or to act arbitrarily or unreasonably."). Under this abuse-of-discretion review, sufficiency of the evidence is only a relevant factor for asserting error, not an independent ground. *See In re T.D.C.*, 91 S.W.3d at 872. The sufficiency review in this case is related to the first inquiry—whether the trial court had sufficient information upon which to exercise its discretion. *See id.*

"Findings of fact entered in a case tried to the court have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see In re Davis*, 30 S.W.3d 609, 613 (Tex. App.—Texarkana 2000, no pet.). "The trial court's findings of fact are reviewable for legal (and factual) sufficiency of the evidence by the same standards as applied in reviewing the legal (and factual) sufficiency of the evidence supporting a jury's finding." *Anderson*, 806 S.W.2d at 794; *see In re Davis*, 30 S.W.3d at 613.

8

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the trial court's judgment, disregarding all evidence and inferences to the contrary unless a reasonable factfinder could not do so. *City of Keller v. Wilson*, 168 S.W.3d 802, 810–11 (Tex. 2005). Anything more than a scintilla of probative evidence is legally sufficient to support the trial court's finding. *In re T.D.C.*, 91 S.W.3d at 872. If we determine that there was sufficient evidence to support a decision on modification, then we must address the second inquiry and determine whether the trial court made a reasonable decision. *Id.*

## B.    Applicable Law

In an effort to ensure stability and continuity for children, Texas law imposes significant hurdles before a conservatorship order may be modified. *In re H.N.T.*, 367 S.W.3d 901, 903–05 (Tex. App.—Dallas 2012, no pet.). One attempting to modify an order establishing conservatorship, possession, and access to a child must show that (1) there has been a material and substantial change in circumstances since the rendition of the existing order, and (2) the modification would be in the best interest of the child. TEX. FAM. CODE ANN. § 156.101(a). Here, J.T. disputes both prongs.

"To prove a material change of circumstance has occurred, a movant must show the conditions as they existed at the time of entry of the prior order." *In re C.C.J.*, 244 S.W.3d 911, 919 (Tex. App.—Dallas 2008, no pet.) (citing *In re T.W.E.*, 217 S.W.3d at 559). "Once such conditions have been established, the movant must show what material changes have occurred in the intervening period." *Id.* (citing *In re T.W.E.*, 217 S.W.3d at 559); *see In re A.L.E.*, 279 S.W.3d 424, 428–29 (Tex. App.—Houston [14th

9

Dist.] 2009, no pet.) (identifying a non-comprehensive list of material changes, as described by other courts, to include (1) marriage of one of the parties, (2) poisoning of the child's mind by one of the parties, (3) change in the home surroundings, (4) mistreatment of the child by a parent or step-parent, or (5) a parent's becoming an improper person to exercise custody). In other words, "the record must contain both historical and current evidence of the relevant circumstances," otherwise "the court has nothing to compare and cannot determine whether a change has occurred." *Zeifman v. Michels*, 212 S.W.3d 582, 594 & n.1 (Tex. App.—Austin 2006, pet. denied). In this case, we examine the evidence to determine what conditions existed on July 8, 2010, the date of the order sought to be modified, and what material changes occurred in the intervening period. *See In re C.C.J.*, 244 S.W.3d at 919; *Zeifman*, 212 S.W.3d at 594 & n.1. When the moving party, who has the burden of showing a material and substantial change in circumstances, has not met that burden, the trial court must deny the motion. *See In re T.W.E.*, 217 S.W.3d at 559.

Regarding the second prong—whether the modification would be in the best interest of the children, *see* TEX. FAM. CODE ANN. § 156.101(a), the family code is silent as to the specific factors the trial court should consider when determining whether a geographic restriction on residency is in the best interest of a child. In *Lenz v. Lenz*, the Texas Supreme Court provided a variety of factors relevant to the determination of whether a geographic restriction is in the best interest of the child, including: (1) the reasons for and against the move, including the parents' good faith motives in requesting or opposing it; (2) health, education, and leisure opportunities afforded by the move; (3)

10

the degree of economic, emotional, and educational enhancement for the custodial parent and child; (4) the effect on extended family relationships; (5) accommodation of the child's special needs or talents; (6) the effect on visitation and communication with the non-custodial parent to maintain a full and continuous relationship with the child; (7) the possibility of a visitation schedule allowing the continuation of a meaningful relationship between the non-custodial parent and child; and (8) the ability of the non-custodial parent to relocate.  79 S.W.3d 10, 15–16 (Tex. 2002).  In doing so, the supreme court recognized that cases such as these are intensely fact-driven and therefore involve the balancing of these numerous factors, as opposed to formulaic tests.  *Id.*

## C.      Challenge to Modification of the Geographical Restriction

### 1.       Request to Extend Restriction to Adjoining Counties Tried by Consent

By his fourth issue, which we address first, J.T. asserts that the trial court abused its discretion in ordering a new geographical restriction to include Coryell and adjoining counties because C.T. did not request such a modification.  We agree that C.T.'s petition requested only that the trial court lift the geographic restriction.  C.T. did not specifically request a restriction to Coryell and adjoining counties.  However, at the hearing on her motion to modify, C.T. testified that she sought a variety of modifications.  She requested that the trial court lift the geographic restriction; she asked that the restriction simply be limited to the State of Texas; and, she asked for a restriction of seventy-five to one hundred miles from Coryell County.  Based on this testimony, C.T. requested, among other things, that the trial court broaden the restriction to include counties within a hundred-mile radius of Coryell County.  This would include counties

11

adjacent to Coryell County. J.T. did not object to this testimony. So we conclude that, although not in C.T.'s petition, this modification was requested and tried by consent. *Cf. Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (concluding that the record did not reflect that the geographic-restriction issue was tried by consent.). We overrule J.T.'s fourth issue.

### 2. Material and Substantial Change

By his first and second issues, J.T. asserts that the evidence did not establish that a material and substantial change supported the trial court's modified restriction. We agree.

At the hearing on her modification request, C.T. focused her testimony on moving with her children to Travis or Williamson County. She testified about job opportunities in those counties and about activities available to her children there. C.T. agreed that she was seeking to lift the geographical restriction so that she could better the life of her children and promote her own well-being and her children's benefits. C.T. testified generally that she had "been offered several jobs this past year alone that [she had] turned down" and that "[e]verything [was] from Temple on to Georgetown and Round Rock." According to C.T., the job opportunities, including one offer from an eBay office, came from the Georgetown, Round Rock, or Austin areas—cities located in Williamson County or Travis County, not in Coryell or its adjoining counties. But this testimony relates only to current circumstances. Absent is testimony regarding conditions that existed in July 2010. And the record must contain historical evidence of relevant circumstances for comparison in order to determine whether a change has occurred.

12

*See Zeifman*, 212 S.W.3d at 594 & n.1.

From our review of the record, the only evidence suggesting that conditions had changed since 2010 were C.T.'s responses that "prices [are] rising," she is "stuck at the same rate," and "[t]here is no advancement," and her agreement that she thought she had exhausted her ability to move forward in Coryell County. But this is not historical evidence upon which a trial court can make a determination that a material and substantial change in circumstances has occurred. *See In re T.D.C.*, 91 S.W.3d at 872.

Moreover, our review of the trial court's December 9, 2013 findings reveals only the following factual basis for its determination that a material and substantial change of circumstances occurred: C.T.'s "testimony regarding her current employment, her employment opportunities." We find no mention of historical facts from which it could have made that determination.

We reach the same conclusion after reviewing the trial court's December 20, 2013 additional findings. The majority of its findings support the court's best-interest determination. For example, the trial court found the geographical modification would allow C.T. to expand her employment opportunities, afford her better work hours, and increase her ability to provide for her children. In addition, the court found that "[t]he modification would allow the children to be closer to their extended family and friends" and that J.T. could still visit his children daily if necessary, communicate with them and share in their care. There are also a number of findings that show circumstances have not changed. For example, J.T. resides in the same home. C.T. has the same job. The children attend the same school. J.T. remains medically retired from the Army with

13

the same health concerns. Neither parent has remarried. C.T. has provided a safe and stable environment for the children since the divorce. Only the following finding appears to address a material and substantial change: "[C.T.] is forced to work longer hours at lower paying jobs as a result of the previous geographic restrictions." And even for this finding, the record offers no historical fact or even circumstantial evidence that allows for a comparison of the "longer hours" and lower-paying jobs. *See In re T.D.C.*, 91 S.W.3d at 872; *see also In re A.L.E.*, 279 S.W.3d at 429 (explaining that because the law does not prescribe any particular method for a showing of changed circumstances, circumstantial evidence may be used to establish that change, and concluding that, even in the absence of direct evidence, "[t]he record is replete with evidence that [the mother's] substance-abuse problems have significantly, and negatively, affected A.L.E. since she came to reside with her mother). Instead, the facts that support this finding appear to be the job opportunities near Austin that existed at the time of the modification request.

Because there is no evidence of conditions as they existed on July 8, 2010, the trial court had nothing with which to compare the present circumstances. *See In re C.C.J.*, 244 S.W.3d at 919. So the trial court could not determine whether a change occurred in the intervening period. *See id.*; *Zeifman,* 212 S.W.3d at 594 & n.1. Therefore, reviewing the record as a whole, *see Gillespie*, 644 S.W.2d at 449, we conclude that the trial court abused its discretion in ordering the modification of the children's geographical restriction because it did not have sufficient information upon which to exercise its discretion. *See Zeifman*, 212 S.W.3d at 594 & n.1; *In re T.D.C.*, 91 S.W.3d at 872; *see also Downer*, 701 S.W.2d at 241. C.T., who had the burden of

14

showing the occurrence of a material and substantial change in circumstances, did not meet her burden, and the trial court should have denied her motion. *See Zeifman*, 212 S.W.3d at 589. We sustain J.T.'s first and second issues.[8]

### III. CONCLUSION

We reverse and remand for proceedings consistent with this opinion, including the entry of an order denying C.T.'s proposed modification of the geographical restriction.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 24th
day of September, 2015.

---

[8] Because this analysis is dispositive of this appeal, we need not address J.T.'s remaining issues, which challenge the trial court's best-interest finding. *See id.* R. 47.1; TEX. FAM. CODE ANN. § 156.101(a) (West, Westlaw through 2015 R.S.).