

# NUMBER 13-07-00758-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ERIC J. ROMERO, PH.D.,**                                       **Appellant,**

**v.**

**ODRA JULIETA ZAPIEN A/K/A
ODRA J. TORT,**                                           **Appellee.**

---

### On appeal from the County Court at Law No. 1
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Garza
### Memorandum Opinion by Chief Justice Valdez

This appeal pertains to various orders involving the divorce of appellant, Eric J. Romero, Ph.D., and Odra J. Zapien a/k/a Odra J. Tort, and various child custody issues. By five issues, appellant, advancing pro se, contends that the trial court: (1) abused its discretion in awarding appellee excessive child support in contravention of the family code;

(2) violated appellant's constitutional rights regarding possession and visitation with the couple's only child; (3) treated appellant unfairly in ordering him to pay appellee's attorney's fees; (4) abused its discretion in removing a geographic restriction pertaining to appellee's possession of the couple's child, even though appellant had requested a jury trial on this issue; and (5) treated him unfairly and delayed hearings on the various motions, which "amplified the damage that Mrs. Tort has done to the parent/child relationship." We affirm, in part, and reverse and remand, in part.

## I. BACKGROUND

Appellant and appellee were married on May 11, 2001. While married, appellant and appellee had one child, a daughter. On November 22, 2002, appellant filed his original petition for divorce in Hidalgo County, Texas. At the time of the divorce, both parties resided in Edinburg, Texas. In addition to his divorce petition, appellant requested a temporary restraining order preventing appellee from relocating and attached an affidavit to his divorce petition, stating that he had reason to suspect that appellee would relocate to El Paso County, where her parents live.

After a hearing, the trial court granted appellant's request for a divorce and entered a final decree of divorce, which named appellant and appellee joint managing conservators and granted appellee the exclusive right "to establish the primary residence of the child within Hidalgo County, Texas." The trial court also imposed a geographic restriction, which prohibited appellee from relocating from Hidalgo County. The restriction provided as follows:

> **ODRA JULIETA ZAPIEN** will not relocate from Hidalgo County, Texas, unless she seeks the authority of this Court or **ERIC ROMERO** relocates from Hidalgo County, Texas, in which case, **[ODRA] JULIETA ZAPIEN**, Respondent, and her daughter may relocate to any place in the world without seeking the authority of this Court. Upon **ERIC ROMERO** relocating more than 100 miles away from **ODRA JULIETA ZAPIEN**, the standard visitation

2

as outlined in the Texas Family Code Section 153.313- ___Parents Who Reside More Than 100 Miles Apart___ will apply.

(Emphasis in original.) The final divorce decree also, among other things: (1) set forth standard visitation for both appellant and appellee; (2) ordered appellant to pay $1,073 per month in child support to appellee; and (3) ordered appellant to provide health insurance for the minor child and that the parties evenly split heath care costs not covered by insurance.

While he was living in Edinburg, appellant was employed as a professor at the University of Texas-Pan American. At some point after the divorce decree was entered, appellant voluntarily chose to move to Florida to take a more lucrative job. However, while he was living in Florida, appellant decided that he wished to move back to Edinburg to be closer to his daughter. Appellant tendered his resignation to his employer in Florida and moved back to Edinburg without a job.

On July 23, 2007, appellant, advancing pro se, filed an original petition to modify the divorce decree. Appellant alleged that his child support and health insurance obligations pertaining to the couple's child should be modified because he had no health insurance and no income, given that he was unemployed. Appellant requested that: (1) appellee provide health insurance for the child; (2) he pay for half of the child's private school tuition directly to the school as child support; (3) appellee be ordered to keep the child in private school; and (4) his child support obligations be reduced to that of a minimum wage worker.

The trial court set a hearing on appellant's motion to modify for September 18, 2007; however, this setting was reset because appellee's attorney apparently was not notified of the hearing. In the meantime, appellee filed a motion for enforcement of child support by contempt on October 23, 2007. In this filing, appellee alleged that appellant had not paid his court-ordered child support of $1,073 for the months of July 2007 to October 2007, and

that appellant had violated the divorce decree by allowing health insurance coverage for the child to lapse. Appellee requested that the trial court award her: (1) $4,292 in child support arrearages; (2) $399 in insurance premiums; (3) $595 in unpaid medical reimbursements; and (4) attorney's fees and court costs.

On November 7, 2007, the trial court conducted a hearing on appellee's motion for enforcement. After hearing arguments from both parties and appellee's testimony, the trial court recessed without making a decision. Later, on November 16, 2007, appellant filed a pro se amended motion to modify the divorce decree requesting that he be granted "joint physical possession" of his daughter. In December 2007, the trial court conducted two hearings on appellant's original motion to modify and appellee's motion for enforcement. On December 26, 2007, the trial court entered an order holding appellant in contempt for failing to pay his child support. The trial court found that appellant had failed to pay any child support from July 1, 2007 to December 1, 2007, and that he was in arrears for $6,438. The $6,438 in arrearages was awarded to appellee in addition to $950 in attorney's fees and court costs and $437.50 in health insurance expenses corresponding to the relevant time period. The trial court did, however, grant, in part, appellant's motion to modify and reduced his child support payments to $575 per month and ordered him to pay appellee for any health insurance premiums that appellee's employer did not cover.[1]

The trial court conducted a hearing on appellant's pro se amended motion to modify on February 1, 2008. At this hearing, appellant, still advancing pro se, argued his entitlement to joint physical possession of the child and alleged that appellee may violate the geographic restriction in the divorce decree by moving to El Paso in the near future. Among the witnesses testifying at this hearing was appellee's counsel, who stated that he

---

[1] The record reflects that at the time of the December 26, 2007order, appellee was a teacher for the Edinburg Consolidated Independent School District and that appellee's employer covered the child's health care expenses.

4

bills at $175 per hour; he had done fifteen hours of work on the case; and he had done family law for seventeen years in proving up entitlement to $4,125 in attorney's fees. On February 27, 2008, the trial court entered an order denying appellant's pro se amended motion to modify requesting joint physical possession of the child, but some modifications were made to the visitation schedule.[2] The trial court also granted appellant full access to determining the education of the child and encouraged the parties to leave the child in private school because she was thriving. With respect to appellant's assertion regarding the geographic restriction, the trial court declined to lift the restriction at that time. Moreover, the trial court awarded appellee's counsel $1,000 in attorney's fees.

On March 25, 2008, appellant filed a pro se motion for new trial, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). On July 30, 2008, appellee filed a petition to modify the parent-child relationship, seeking to lift the geographic restriction contained in the divorce decree and modify appellant's visitation rights to those associated with parties residing more than 100 miles apart. Appellee argued that the geographic restriction had already been voided when appellant chose to move to Florida "for almost a year." Appellant filed a pro se answer to appellee's motion to modify and a counter-petition to modify the parent-child relationship. In this filing, appellant requested a jury trial, objected to the lifting of the geographic restriction, and requested that he be named primary managing conservator with full custody of the child.

Later, on August 26, 2008, appellant, now represented by counsel, filed a motion for enforcement, asking that he be named the primary managing conservator for his

---

[2] The trial court's February 27, 2008 order was superceded by an order signed on February 27, 2009, which provided everything contained in the February 27, 2008 order and added that appellee was responsible for paying for the child's private tuition unless she could demonstrate to the trial court that she could not, in which case the tuition costs would be divided evenly between appellant and appellee. The February 27, 2009 order also ordered appellee not to relocate from Hidalgo County and to ensure that the child maintains contact with appellant.

daughter and requesting additional visitation with the child and that appellee be held in contempt for moving to El Paso with the child. Appellant filed his first amended motion for enforcement on October 9, 2008, asserting the same arguments made in his original motion for enforcement and alleging that appellee allowed for the health insurance covering the child to lapse and that he incurred $2,978.63 in medical expenses treating the child for a hernia.

The trial court conducted hearings on all the remaining pending motions—appellant's motion for enforcement and appellee's petition to modify the parent-child relationship. After hearing testimony from both appellant and appellee, the trial court entered an order on August 18, 2009. In this order, the trial court noted that "[a] jury was waived for the motion for enforcement, and all questions of fact and of law were submitted to the Court." Moreover, the order recited that appellee was in contempt for: (1) leaving Hidalgo County without court authorization; (2) denying access of the child to appellant; (3) failing to pay her share of the medical expenses associated with the child; and (4) failing to provide health insurance for the child for five months once she relocated to El Paso. As a result of her violations, the trial court assessed a civil fine of $500 to be paid into the Court's registry and $1,500 in attorney's fees to be paid to appellant's attorney and ordered appellee to reimburse appellant $437.50 for failing to provide health insurance for the child. The trial court awarded appellant a $1,489.32 child-support credit to compensate him for one-half of the medical expenses incurred as a result of the child's hernia surgery. Additionally, appellant was awarded an additional week of visitation with the child during the Thanksgiving or Christmas holidays to make up for the time that appellee denied appellant access to the child. Finally, the trial court lifted the geographic restriction and revised the visitation schedule according to section 153.313 of the family code, which

6

outlines visitation for parties residing more than 100 miles apart. *See* TEX. FAM. CODE ANN. § 153.313 (Vernon Supp. 2009).

Appellant, now advancing pro se, filed numerous notices of appeal, challenging the trial court's various orders. Appellant also filed several pro se appellate briefs detailing his various arguments. After reviewing each of the briefs, we will analyze appellant's most recent brief filed on March 4, 2010, which appears to encompass all of the arguments made in previous filings.[3]

## II. CHILD SUPPORT

By his first issue, appellant argues that the trial court abused its discretion in awarding appellee back child support for the period of time in which appellant quit his job in Florida until the December 2007 hearings. Specifically, appellant asserts that because he was unemployed during the relevant time period, he should only have been required to pay child support premised on a minimum wage finding, rather than a continuation of the $1,073 per month in child support that had been ordered in the divorce decree. Appellant also alleges that the trial court made a mathematical error in calculating the reduction of his child support from $1,073 to $575 and abused its discretion in requiring him to pay a portion of the child's private school tuition. Appellee counters by arguing that the trial court's child support award was based on appellant's earning potential and that appellant was intentionally underemployed. Appellee further argues that the evidence adduced at the hearing supports the trial court's decision regarding child support.

## A. Standard of Review and Applicable Law

An order regarding child support will not be overturned unless the trial court clearly abused its discretion. *Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993); *Worford*

---

[3] In his March 4, 2010 appellate brief, appellant informs this Court that he has now moved to El Paso to be closer to his daughter and that he has filed another motion for enforcement in El Paso. This newly-filed motion, however, is not within the scope of this appeal.

7

*v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *see Office of the Att'y Gen. v. Buhrle*, 210 S.W.3d 714, 717 (Tex. App.–Corpus Christi 2006, pet. denied); *see also Smith v. Smith*, 143 S.W.3d 206, 217 (Tex. App.–Waco 2004, no pet.). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles, or, in other words, whether the act was arbitrary or unreasonable. *See Worford*, 801 S.W.2d at 109; *see also Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). A trial court's failure to analyze or apply the law correctly constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). A trial court is given broad discretion in setting child support payments and also in decreasing or increasing such payments. *See In re D.S.*, 76 S.W.3d 512, 520 (Tex. App.–Houston [14th Dist.] 2002, no pet.). Furthermore, we view the evidence in the light most favorable to the trial court's action, indulging every presumption in favor of the judgment. *See Zorilla v. Wahid*, 83 S.W.3d 247, 253 (Tex. App.–Corpus Christi 2002, no pet.); *see also Warren v. Warren*, No. 13-05-00429-CV, 2008 Tex. App. LEXIS 1859, at *5 (Tex. App.–Corpus Christi Mar. 13, 2008, no pet.) (mem. op.).

The trial court may order either or both parents to support a child in the manner specified by the order. TEX. FAM. CODE ANN. § 154.001 (Vernon 2008). In other words, each party has a duty to support his or her minor child. *Id.* § 151.001(b) (Vernon 2008); *see Villasenor v. Villasenor*, 911 S.W.2d 411, 419 (Tex. App.–San Antonio 1995, no writ). Under section 154.001, a trial court must order payment of child support "once financial need and ability to pay [are] established." *Orsak v. Orsak*, 642 S.W.2d 566, 567 (Tex. App.–Dallas 1982, no writ) (citing *Grandinetti v. Grandinetti*, 600 S.W.2d 371, 372 (Tex. Civ. App.–Houston [14th Dist.] 1980, no writ)). For purposes of determining child support liability, the trial court shall calculate net resources, including all wage and salary income

8

and other compensation for personal services, interest, dividends and royalty income, self-employment income, net rental income, and all other income actually being received. TEX. FAM. CODE ANN. § 154.062(a), (b) (Vernon Supp. 2009). Further, there must be some evidence in the record of a substantive and probative character of net resources in order for this duty to be discharged. *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 236 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

Moreover, in *Garner v. Garner*, the Dallas Court of Appeals noted the following with respect to the calculation of child support:

> Chapter 154 of the Texas Family Code establishes a multiple-step process for determining the amount of child support. The trial court must first determine the parties' gross income, net income, and monthly net resources. And, each party is required to furnish information sufficient to identify the party's net resources and ability to pay support, such as production of copies of income tax returns, financial statements, and pay stubs. After determining the amount of net resources, the trial court must decide whether to apply the child support guidelines or whether application of the guidelines would be unjust or inappropriate. Importantly, a parent's child support obligation is not limited to that parent's ability to pay from current earnings; rather it extends to his or her financial ability to pay from any and all available sources.

*See* 200 S.W.3d 303, 306 (Tex. App.–Dallas 2006, no pet.); *see also Santillan v. Campos*, No. 04-08-00904-CV, 2009 Tex. App. LEXIS 8301, at **8-9 (Tex. App.–San Antonio Oct. 21, 2009, no pet. h.) (mem. op.). A court may, within its broad discretion, modify an order for child support if the "circumstances of the child or a person affected by the order have materially and substantially changed." TEX. FAM. CODE ANN. § 156.401(a) (Vernon 2008).

## B. Discussion

The record contains appellant's 2005 IRS tax return, which reflects that appellant had an adjusted gross income of $92,828 around the time the couple got divorced. Using this figure, the trial court determined that appellant should pay appellee $1,073 per month

9

in child support.[4]  Shortly thereafter, appellant voluntarily moved to Florida to take a more lucrative job, which, according to his 2006 IRS tax return, provided appellant with an adjusted gross income of $138,456.  Later, appellant chose to return to the Rio Grande Valley to be closer to his daughter.  Appellant submitted a letter of resignation to his employer in Florida and subsequently moved back to Edinburg, Texas, without a job.  Appellant testified that he applied for numerous jobs upon arriving in Edinburg; however, he was only able to secure an online teaching position, which, as appellant admitted, did not amount to steady employment.[5]  Once he quit his job in Florida, appellant ceased paying child support and filed a motion to modify his child support obligations, mistakenly assuming that the filing of his motion to modify relieved him of the obligation of paying his child support obligations.

"If the actual income of the obligor is significantly less than what the obligor could earn because of intentional unemployment or underemployment, the court may apply the support guidelines to the earning potential of the obligor."  TEX. FAM. CODE ANN. § 154.066 (Vernon 2008); *see Garner*, 200 S.W.3d at 306 ("A child support obligor qualified to obtain gainful employment may not avoid his support obligation by voluntarily remaining unemployed or underemployed.").  "In effect, the court can prevent a parent from evading child support by treating the parent's earning potential as an element of his net resources." *Dubois v. Dubois*, 956 S.W.2d 607, 610 (Tex. App.–Tyler 1997, no pet.).  Though the family code does not define "underemployment" or "unemployed" with respect to section 154.066, Texas courts have traditionally held that "the reduction in income must have been

---

[4] Appellant does not challenge the trial court's child support calculation of $1,073 in the divorce decree.

[5] Outside of appellant's own self-serving testimony, the record does not contain any evidence of appellant's pursuit of finding employment once he moved back to Edinburg, nor does it contain competent evidence of appellant's earned income and other financial resources from July 2007 to December 2007—the time period in which appellant failed to make any child support payments.

effectuated with a design to reduce the child support payments." *Id.* (citing *Starck v. Nelson*, 878 S.W.2d 302, 307 n.10 (Tex. App.–Corpus Christi 1994, no writ); *Woodall v. Woodall*, 837 S.W.2d 856, 858 (Tex. App.–Houston [14th Dist.] 1992, no writ); *Casterline v. Burden*, 560 S.W.2d 499, 501 (Tex. Civ. App.–Dallas 1977, no writ); *McSween v. McSween*, 472 S.W.2d 307, 310 (Tex. Civ. App.–San Antonio 1971, no writ)).

In making a finding of intentional underemployment or unemployment, there must be evidence in the record that a parent reduced his income for the purpose of decreasing his child support payment. *See Zorilla*, 83 S.W.3d at 253; *see also Colvin v. Colvin*, No. 13-03-00034-CV, 2006 Tex. App. LEXIS 4496, at *15 (Tex. App.–Corpus Christi May 25, 2006, pet. denied) (mem. op.). The requisite intent, or lack thereof, to be underemployed or unemployed for the purpose of determining an award of child support may be inferred from such circumstances as the parent's education, economic adversities, business reversals, business background, and earning potential. *See Zorilla*, 83 S.W.3d at 253; *see also Colvin*, 2006 Tex. App. LEXIS 4496, at *15. However, "[t]here is no presumption that simply because a parent is no longer as lucratively employed as he was during his marriage, he is intentionally underemployed or unemployed." *Dubois*, 956 S.W.2d at 610. Furthermore, "we must be cognizant of a parent's right as a citizen to the pursuit of happiness and to the freedom to live where he chooses . . . . And it is axiomatic that although a parent's financial support of his children is of prime importance, so too is his physical presence in their lives." *Id.* Once the parent who is obligated to pay child support has offered proof of his current wages, the other parent bears the burden to show that the obligor is intentionally underemployed or unemployed. *Zorilla*, 83 S.W.3d at 253.

Appellant argues that, in moving back to Edinburg, he had spent the majority of his savings, and, because he had no job and no income, he could no longer pay his child

11

support obligations.[6]  At the hearing on his motion to modify, appellant admitted that he made a mistake in failing to make any child support payments during the relevant time period, but that his mistake should be forgiven because he is not an attorney who is familiar with the child support laws.  This argument is not persuasive because pro se litigants are held to the same standards as licensed attorneys and must comply with applicable laws and rules of procedure.  *See Green v. Kaposta*, 152 S.W.3d 839, 841 (Tex. App.–Dallas 2005, no pet.); *see also Siddiqui v. Siddiqui*, No. 14-07-00235-CV, 2009 Tex. App. LEXIS 1443, at *4 (Tex. App.–Houston [14th Dist.] Mar. 3, 2009, pet. denied) (mem. op.) ("While we have compassion for the plight of the pro se litigant attempting to follow the rule of legal procedure and substantive laws, and therefore construe pro se pleadings and briefs liberally, we must still hold appellant to the same standard as a licensed attorney, requiring that he follow those same rules and laws . . . .  To do otherwise would give a pro se litigant an unfair advantage over a litigant represented by counsel."); *Sears v. Highlands Ins. Co.*, No. 13-97-135-CV, 1998 Tex. App. LEXIS 3810, at *4 (Tex. App.–Corpus Christi June 25, 1998, no pet.) (mem. op., not designated for publication) ("Ignorance or mistake of the law is no excuse.") (citing *Pollard v. Steffens*, 161 Tex. 594, 343 S.W.2d 234, 237 (1961)).

Appellant also argued that it was not logical for him to sacrifice his lucrative earnings in Florida to move back to Edinburg for the sole purpose of reducing his child support payments.  However, the trial court, after conducting a hearing on this matter and hearing appellant's justifications for failing to pay child support to appellee for the relevant time

---

[6] Though we recognize that documents solely appearing in the appendix of an appellate brief are not part of the record and are generally not considered on appeal, *see Till v. Thomas*, 10 S.W.3d 730, 733-34 (Tex. App.–Houston [1st Dist.] 1999, no pet.), we find it telling that appellant attached a line graph (Appendix 4) to his appellate brief, which indicated that he had approximately $30,000 in financial resources at the time he ceased paying child support in July 2007.  Moreover, appellant's own line graph indicates that he had approximately $10,000 in financial resources in December 2007, when the trial court held him in contempt for failing to pay child support.

period, held appellant in contempt for failing to make his $1,073 child support payments from July 1, 2007 to December 1, 2007. *See Garner*, 200 S.W.3d at 308 ("As the fact finder, the trial court had the discretion to disbelieve appellant's testimony and was not required to accept appellant's evidence of his income and net resources as true . . . . Because the trier of fact is in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our judgment for that of the trial court.") (citing *Dishner v. Huitt-Zollars, Inc.*, 162 S.W.3d 370, 378 (Tex. App.–Dallas 2005, no pet.); *Friermood v. Friermood*, 25 S.W.3d 758, 760 (Tex. App.–Houston [14th Dist.] 2000, no pet.)). Accordingly, on December, 26, 2007, the trial court ordered appellant to pay appellee $6,438 in back child support, $950 in attorney's fees, and $437.50 for expenses associated with the child's health insurance coverage.[7]

Based on the foregoing, we cannot say that the trial court abused its discretion in awarding appellee back child support. It is clear to this Court that appellant voluntarily resigned from his lucrative position in Florida without securing a job in Edinburg. Contrary to his assertions, appellant, an individual with a Ph.D. in management, a former business professor at the University of Texas-Pan American, and someone who has earned more than $90,000 per year in the recent past, has the potential to earn much more than minimum wage. Moreover, appellant testified that he had a substantial amount of money in his savings account at the time of his move from Florida, which could have been used to pay his child support obligations before it was diminished, and the record does not include any evidence of appellant's alleged efforts to obtain steady employment when he moved back to Edinburg. Furthermore, we find it noteworthy that appellant failed to make any child support payments, much less the required $1,073 in child support, to appellee

---

[7] On appeal, appellant does not challenge the trial court's award pertaining to the health insurance coverage for the child.

for a period of approximately six months, even though he had some funds that could have been used to pay. Such a failure to pay child support cannot possibly be in the best interest of the child. As a result, we conclude that the trial court's application of section 154.066 of the family code to this situation was not erroneous; thus, the trial court did not abuse its discretion in finding that appellant was intentionally underemployed or unemployed. *See* TEX. FAM. CODE ANN. § 154.066; *Garner*, 200 S.W.3d at 308; *Zorilla*, 83 S.W.3d at 253; *see also Colvin*, 2006 Tex. App. LEXIS 4496, at *15.

After the trial court held appellant in contempt for failing to pay child support from July 2007 to December 2007, the trial court reduced appellant's child support obligations from $1,073 to $575 per month. Appellant argues that this calculation is erroneous because the trial judge indicated in open court that he intended to reduce appellant's child support obligations by one-half. Thus, one-half of $1,073 constitutes $536.50, rather than the $575 amount indicated by the trial judge. Appellant further argues that the $575 figure amounts to more than 32% of his net income and, therefore, violates section 154.062 of the family code. *See* TEX. FAM. CODE ANN. § 154.062. We do not find appellant's argument that the trial court's reduction of his child support payments constitutes more than 32% of his net income or net resources to be persuasive because the record does not contain competent evidence of appellant's net income or net resources at the time of the trial court's decision. Without such information, we cannot determine that appellant's net income at the time of the trial court's decision amounted to more than 32% of appellant's net income.[8]

With respect to appellant's first argument regarding the trial court's calculation of child support in the December 26, 2007 order, we reference the following statements made

---

[8] In fact, when appellee's counsel asked appellant what he made from his online teaching job, appellant refused to divulge his salary and stated that he made "dollars," as opposed to Japanese Yen, British Pounds, Euros, and other world currencies that appellant referenced in his testimony.

14

by the trial court at the hearing on appellant's motion to modify and appellee's motion for enforcement:

> THE COURT: All right. I am going to make a [determination], Mr. Romero, in the following: You do owe child support of [$]6,438 as of July through December. You are responsible for that amount. That is $1[,]073 per month.
>
> Now, I could make a determination that you should continue paying the same amount of income—I mean child support because you have the ability to earn that type of income, but I am not going to make that determination. *I am going to decrease your child support in half.* You will be responsible as of today to pay the amount of $575 child support as of today, but you are responsible on [sic] paying the $6,438.

(Emphasis added.)

A judgment or order that is rendered in writing and signed by the trial judge becomes the official judgment of the court. *See Harrington v. Harrington*, 742 S.W.2d 722, 724 (Tex. App.–Houston [1st Dist.] 1987, no writ). "Recitals in a judgment or signed order of the court thus control over conflicting recitals in the record." *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 85 n.21 (Tex. App.–Houston [1st Dist.] 2008, no pet.); *see In re JDN Real Estate-McKinney, L.P.*, 211 S.W.3d 907, 914 n.3 (Tex. App.–Dallas 2006, orig. proceeding) (holding that a written order controlled over conflicting oral pronouncement); *see also In re Marriage of Ellis*, No. 06-08-00012-CV, 2008 Tex. App. LEXIS 6289, at *8 (Tex. App.–Texarkana Aug. 19, 2008, no pet.) (mem. op.) (citing *In re K.M.B.*, 148 S.W.3d 618, 622 (Tex. App.–Houston [14th Dist.] 2004, no pet.)). Here, the trial court announced that appellant's child support should be $575 per month, and the trial court's written order reflects the same amount. *Cf. Keim v. Anderson*, 943 S.W.2d 938, 946 (Tex. App.–El Paso 1997, no writ) (stating that, when the record reflects a clerical

15

variance between the judgment announced in open court and the judgment which the trial judge eventually signed, the appellate court can modify the judgment to correct the mistake). Appellant bases his entire argument regarding the alleged erroneous child support calculation on the trial court's oral pronouncements in open court, which as we have noted above, are of less significance than trial court's written order.

In any event, we believe that the trial court's announcement of a specific amount of child support is more significant than the generalized statement that appellant's child support was going to be decreased in half. *See, e.g.*, TEX. GOV'T CODE ANN. § 311.026 (Vernon 2005) (providing that, when analyzing conflicts between general and specific provisions in statutes, the special provision prevails as an exception to the general provision). We surmise that the trial court's usage of the terms "decrease . . . child support in half" was merely to approximate the reduction in appellant's child support. By arguing that the trial court's calculation of appellant's child support did not exactly equal one half of the original child support obligation, we cannot say that the trial court clearly abused its discretion so as to compel us to modify the trial court's child support order.

Appellant's final argument regarding the trial court's child support award pertains to an additional child support award to appellee to be used to enroll the child in private school. Specifically, appellant complains about the part of the trial court's order requiring him to pay one-half of the private school tuition for the child in the event that appellee could not pay the tuition and demonstrated to the trial court her inability to pay. The crux of this argument, as we can tell, is that appellant complains that appellee allegedly never requested such relief in the trial court and that the award violates several provisions of the

16

family code.[9]  *See* TEX. FAM. CODE ANN. §§154.062, .066, .125 (Vernon Supp. 2009).

A court may order additional child support depending on the income of the parties and the proven needs of the children.  *Id.* § 154.126(a) (Vernon 2008).  An award of support in excess of the statutory guidelines must be based on the unmet needs of the child.  *See Rodriguez v. Rodriguez*, 860 S.W.2d 414, 417 (Tex. 1993); *see also In re J.A.H.*, No. 08-07-00245-CV, 2009 Tex. App. LEXIS 8876, at *10 (Tex. App.–El Paso Nov. 18, 2009, no pet.) (mem. op.).  The needs of a child are not limited to "the bare necessities of life." *Rodriguez*, 860 S.W.2d at 417 n.3; *Thomas v. Thomas*, 895 S.W.2d 895, 896 (Tex. App.–Waco 1995, writ denied).  The needs of the child and the awarding of additional child support are reviewed under an abuse of discretion standard on a case-by-case basis.  *See Scott v. Younts*, 926 S.W.2d 415, 420 (Tex. App.–Corpus Christi 1996, writ denied); *see also In re J.A.H.*, 2009 Tex. App. LEXIS 8876, at *11.

Here, appellee testified that she and her current husband had fallen on hard times and likely were not able to afford to pay her share of the child's monthly private school tuition of $400.  The record contains IRS tax returns for the years 2006 and 2007, filed jointly by appellee and her current husband.  The tax returns reveal that appellee had an adjusted gross income for 2006 and 2007 of $30,684 and $18,397, respectively.  In addition, appellee provided the trial court with a list of the family's expenses, which added up to $4,565 per month.  On the other hand, appellant did not provide the trial court with any documentation of his net resources at the time the additional child support was ordered.  Moreover, the dispute regarding the child's education arose when appellee indicated that she may no longer be able to pay for the child's private school education and

---

[9] Appellant's argument that appellee never requested this form of relief in the trial court lacks merit because, as noted later, the record reflects that appellee orally moved the trial court to provide such relief.

that she intended to enroll the child in a local public school. Appellant objected to the child's enrollment in the public school and insisted that the child remain enrolled in the private school, even though appellee testified that she may not be able to afford to do so.[10] Upon an oral motion made by appellee, the trial court ordered that the child remain in the private school and that appellee pay for the tuition, presumably using the $575 in child support received from appellant. However, the trial court also included a provision in its order stating that, in the event that appellee cannot afford to pay the private school tuition, she is to notify appellant and the trial court of her inability to do so and, after a hearing, the trial court may order appellant to pay, in addition to his child support obligations, 50% of the private school tuition.

On appeal, appellant cites to various provisions of the family code that were apparently violated; however, he does not explain exactly how these provisions were violated. *See* TEX. R. APP. P. 38.1(i). In fact, section 154.123 of the family code provides that the trial court may consider, among other things, "special or extraordinary educational" expenses of the child when calculating child support payments, which would include private school tuition for children. TEX. FAM. CODE ANN. § 154.123(b)(13) (Vernon 2008). Furthermore, the trial court's order regarding the additional child support is contingent upon the trial court's finding that appellee cannot afford to enroll the child in private school, a situation that, based on the record, does not appear to have happened. As such, it does not appear to this Court that appellant's argument pertaining to the private school tuition is ripe for review.[11] *See Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851-52 (Tex.

---

[10] We note that appellant insists that his daughter attend private schools yet attempts to avoid paying the tuition to attend such schools.

[11] Appellant has not presented any evidence to the trial court demonstrating that appellee proved her inability to pay; that the trial court ordered him to pay half of the private school tuition as a result of appellee's inability to pay; and that appellant has actually made such payments.

2000) (stating that a case is not ripe for determination of whether the plaintiff has a concrete injury when the determination depends upon contingent or hypothetical facts, or on events that have not yet occurred); *see also In re H.B.*, No. 2-06-102-CV, 2006 Tex. App. LEXIS 10247, at **5-7 (Tex. App.–Fort Worth Nov. 30, 2006, no pet.) (mem. op. on reh'g) (holding that absent an actual injury from the operation of the family code, appellant's constitutional challenge was not ripe, and any opinion by the court on that issue would be merely advisory).  Accordingly, we overrule appellant's first issue on appeal.

### III.  POSSESSION OF THE COUPLE'S CHILD

In his second issue, appellant contends that the trial court abused its discretion in denying him joint physical possession of the child.  Specifically, appellant argues that the trial court's decision to allow appellee to maintain physical possession of the child while allowing appellant visitation is not in the best interest of the child and is unconstitutional.  Appellee asserts that section 153.135 of the family code does not require that joint managing conservators be given equal or nearly equal access to the child.  *See* TEX. FAM. CODE ANN. § 153.135 (Vernon 2008).

### A.     Standard of Review

The best interest of the child shall always be the court's primary consideration in determining issues of conservatorship, possession, and access to the child.  TEX. FAM. CODE ANN. § 153.002 (Vernon 2008).  The trial court is given wide latitude to determine the best interest of a minor child.  *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re C.R.T.*, 61 S.W.3d 62, 65 (Tex. App.–Amarillo 2001, pet. denied); *see also In re V.N.S.*, No. 13-07-00046-CV, 2008 Tex. App. LEXIS 5131, at *4 (Tex. App.–Corpus Christi July 3, 2008, no pet.) (mem. op.).  The judgment of the trial court regarding possession and access to the minor child will be reversed only if it appears from the record as a whole that

the court abused its discretion. *See Gillespie*, 644 S.W.2d at 451; *see also Miles v. Peacock*, 229 S.W.3d 384, 391 (Tex. App.–Houston [1st Dist.] 2007, no pet.). Our review must give deference to the trial court because it is in the best position to observe the demeanor of the witnesses and evaluate their credibility. *See In re De La Pena*, 999 S.W.2d 521, 526 (Tex. App.–El Paso 1999, no pet.). A claim of abuse of discretion will not succeed provided that some evidence of substantive and probative character exists to support the trial court's factual findings. *See In re J.R.P.*, 55 S.W.3d 147, 151 (Tex. App.–Corpus Christi 2001, pet. denied); *see also Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.–Houston [1st Dist.] 1993, writ denied) (holding that the evidence need not be compelling or conclusive to support the trial court's exercise of discretion). Moreover, an abuse of discretion ordinarily does not occur when the trial court bases its decision on conflicting evidence. *See In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.–Houston [1st Dist.] 2002, pet. denied).

Section 153.135 of the family code provides that "[j]oint managing conservatorship does not require the award of equal or nearly equal periods of physical possession of and access to the child to each of the joint conservators." TEX. FAM. CODE ANN. § 153.135; *see Garza v. Garza*, 217 S.W.3d 538, 552 (Tex. App.–San Antonio 2006, no pet.). Additionally, there is a rebuttable presumption that the standard visitation order provides reasonable minimum possession of a child for a parent named as a joint managing conservator and that such possession is in the best interest of the child. TEX. FAM. CODE ANN. § 153.252 (Vernon 2008).

B.     Discussion

In the instant case, appellant argues that the trial court, by not allowing him equal physical access with the child, reduced the time he could spend with his daughter, which

is not in her best interest. Appellant further argues that this reduction in time affects his ability to "parent" his daughter, which he alleges is a violation of his constitutional rights. Appellant appears to take issue with the fact that appellee once lived a mere two blocks away from appellant when they both resided in Edinburg. The proximity of their houses allowed for appellant to be in "physical possession" of his daughter nearly 50% of the time. However, once appellee and her family moved to El Paso, this became an impossibility. In support of his argument, appellant states that "[b]eing with his daughter is the most important source of [his] happiness[,] and it is also a source of happiness for his daughter." In his appellate brief, appellant requests that this Court reverse the trial court's possession order and award him "possession on alternative weeks during the school year and half of the summer and Thanksgiving breaks[,] Christmas[,] spring break[,] and other holidays should remain as they are currently ordered."

In the final divorce decree, the trial court appointed appellant and appellee as joint managing conservators of the child. Appellee was granted the exclusive right to designate the child's primary residence within Hidalgo County. With respect to possession, the trial court entered a possession order, which provided appellant with access to the child on: (1) the first, third, and fifth weekends of every month; (2) Tuesdays during the school year from 4:00 p.m. to 8:00 p.m.; (3) Wednesdays from 4:00 p.m. to 8:00 p.m. on weeks in which he did not have weekend visitation; and (4) Thursdays during the school year from 4:00 p.m. to 8:00 p.m. The parties split possession on spring break and Thanksgiving, and, in even-numbered years, appellant was allowed possession of the child on December 26 until the child's Christmas break concluded. In odd-numbered years, appellant was allowed visitation from the day the child's Christmas break began until December 26.

Appellant filed a motion to modify the possession schedule, and, after a hearing, the

trial court, on February 27, 2008, modified the possession schedule to expand appellant's summer visitation and provided appellant visitation with the child on Father's Day and Friday night visitation. Yet, despite this expansion of the possession schedule, appellant requests additional time with his daughter. Appellant argues that the trial court's refusal to expand his access to the child inhibits his ability to raise his own child, which violates the Due Process Clause of the United States Constitution. *See* U.S. CONST. amend XIV.

As previously mentioned, section 153.135 of the family code allows the trial court to award joint managing conservators unequal access or possession of the child, and such awards are presumptively in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 153.135, .252. While we recognize that parents have a constitutional right to make decisions concerning the care, custody, and control of their children, *see Troxel v. Granville*, 530 U.S. 57, 65-66 (2000); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976), appellant has not cited us to authority finding a constitutional infringement based on a trial court's order of unequal possession periods for divorced parents. Furthermore, to the extent that appellant challenges the constitutionality of section 153.135, we will not address such a contention because appellant failed to raise the challenge in the trial court. *See* TEX. R. APP. P. 33.1; *see also Carrizales v. Tex. Dep't of Protective & Regulatory Servs.*, 5 S.W.3d 922, 925 (Tex. App.–Austin 1999, pet. denied). Absent any authority finding that section 153.135 of the family code infringes on the constitutional rights of parents to raise their children, we cannot say that the trial court abused its discretion in denying appellant joint physical possession on an equal basis with appellee. We overrule appellant's second issue.

## IV. APPELLEE'S ATTORNEY'S FEES AWARD

In his third issue, appellant complains about two of the trial court's orders requiring

22

him to pay appellee's attorney's fees of $950 and $1,000, respectively. In particular, appellant argues that appellee's counsel engaged in several instances of professional misconduct, which do not warrant an award of attorney's fees. Because of this, appellant alleges that the trial court treated him unfairly because he was advancing pro se. Appellant requests that we order appellee to pay him $2,772 to account for his attorney's fees.[12] In response, appellee contends that the family code authorizes the award of attorney's fees because she prevailed on the matters at issue.

## A. Applicable Law

An award of attorney's fees is prohibited unless authorized by contract or statute. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009); *see also Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006). Section 9.014 of the Texas Family Code provides for an award of attorney's fees in proceedings to enforce a divorce decree. TEX. FAM. CODE ANN. § 9.014 (Vernon 2008); *see In re Marriage of Malacara*, 223 S.W.3d 600, 603 (Tex. App.–Amarillo 2007, no pet.); *see also O'Neal v. Forehand*, No. 13-08-457-CV, 2009 Tex. App. LEXIS 5091, at *16 (Tex. App.–Corpus Christi July 2, 2009, pet. denied). Furthermore, in disputes pertaining to child custody, section 152.312(a) provides that the trial court:

> shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.

TEX. FAM. CODE ANN. § 152.312(a) (Vernon 2008). We review the trial court's award of

---

[12] Appellant asserts, by this issue, that appellee should pay his attorney's fees; however, in the trial court, appellant repeatedly argued that the parties should only be responsible for paying their own attorney's fees.

23

attorney's fees for an abuse of discretion. *See Chavez v. Chavez*, 12 S.W.3d 563, 566 (Tex. App.–San Antonio 1999, no pet.); *Schneider v. Schneider*, 5 S.W.3d 925, 930 (Tex. App.–Austin 1999, no pet.).

## B. Discussion

The trial court first granted appellee's counsel an award of $950 in attorney's fees on December 26, 2007, following appellee's successful prosecution of her motion for enforcement of child support pertaining to appellant's failure to pay child support from July 2007 to December 2007. At the February 1, 2008 hearing on appellant's motion to modify the divorce decree, the trial court ordered appellant to pay appellee's counsel $1,000 in attorney's fees, even though counsel had requested $4,000 in attorney's fees.

On appeal, appellant asserts that: (1) counsel for appellee presented orders to the court without allowing appellant to review them; (2) the orders allegedly did not correspond to the oral pronouncements made by the trial court; and (3) as a result of counsel's actions, appellant had to hire an attorney and incur $2,772 in attorney's fees to correct the discrepancies. Appellant, however, does not adequately explain on appeal how the orders failed to correspond to the trial court's oral pronouncements in open court. *See* TEX. R. APP. P. 38.1(i). Furthermore, appellant does not direct us to a sworn affidavit that he executed, which would support the veracity of his allegations that appellee's counsel and the trial court failed to allow him to review proposed orders. *See In re Butler*, 270 S.W.3d 757, 759 (Tex. App.–Dallas 2008, orig. proceeding) ("An affidavit is a statement in writing of a fact or facts signed by the party making it, sworn before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office. . . . An affidavit must affirmatively show it is based on the personal knowledge of the affiant. . . . An affidavit is insufficient unless the statements in it are direct and unequivocal and perjury

can be assigned to them.") (internal citations and quotations omitted)). Moreover, appellant complains that counsel's attorney's fee award was excessive "for doing basic and routine work that is typically billed at a much lower rate." The record does not contain evidence to support appellant's contention that the work done by appellee's counsel was basic and routine and regularly billed at a much lower rate; thus, such an accusation is conclusory, speculative, and does not demonstrate an abuse of discretion by the trial court. *See Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Based on the foregoing, appellant has not demonstrated that the trial court abused its discretion in awarding attorney's fees to appellee's counsel.[13] *See* TEX. FAM. CODE ANN. §§ 9.014, 152.312(a); *see also Chavez*, 12 S.W.3d at 566; *Schneider*, 5 S.W.3d at 930. Accordingly, we overrule appellant's third issue.

## V. THE TRIAL COURT'S REMOVAL OF A GEOGRAPHIC RESTRICTION

In his fourth issue, appellant argues that the trial court violated section 105.002 of the family code by ruling on appellee's motion to modify the geographic restriction contained in the divorce decree. *See* TEX. FAM. CODE ANN. § 105.002(c)(1)(E) (Vernon Supp. 2009). Specifically, appellant contends that he requested a jury trial and paid the appropriate fees; therefore, the trial court had no authority to rule on the geographic restriction. *See id.*

### A. Applicable Law

Section 105.002 of the family code governs jury trials in suits affecting the parent-child relationship, including suits "to modify access rights," *Martin v. Martin*, 776 S.W.2d 572, 574 (Tex. 1989) (considering the predecessor to section 105.002), and allows a party

---

[13] Appellant also requests that we "reprimand" appellee's counsel "for his misconduct" and "report him to the Texas Bar Association for violating its Texas Disciplinary Rules of Professional Conduct." Because the record does not support appellant's allegations, we decline to do so.

to demand a jury trial in a suit affecting a parent-child relationship unless the suit seeks adoption or to adjudicate parentage. *See* TEX. FAM. CODE ANN. § 105.002(a), (b); *see also Lenz v. Lenz,* 79 S.W.3d 10, 11-12 (Tex. 2002). A party is entitled to a jury verdict, and the trial court may not contravene a jury's verdict on, among other things, the issue of "whether to impose a restriction on the geographic area in which a joint managing conservator may designate the child's primary residence." *See* TEX. FAM. CODE ANN. § 105.002(c)(1)(E); *see also Spencer v. Vaughn*, No. 03-05-00077-CV, 2008 Tex. App. LEXIS 1708, at *39 n.10 (Tex. App.–Austin Mar. 6, 2008, pet. denied) (mem. op.).

## B.     Discussion

In his original answer to appellee's motion to modify the geographic restriction imposed in the divorce decree, appellant requested that a jury determine the issue regarding the geographic restriction. The record, however, does not reflect that appellant paid the required jury fee. In his appellate brief, appellant states that he paid the required jury fee and directs us to an "exhibit 1" as evidence to support his statement. We are unsure about the location of "exhibit 1" in the record, as appellant has not designated a page number in the record for this evidence. We notice that attached to appellant's original answer to appellee's motion to modify is an "exhibit 1," which is possibly the "exhibit 1" to which appellant was referring. However, "exhibit 1" is a blank, white page with only the heading, "exhibit 1," at the top. This "exhibit" does not indicate that the required jury fee was paid. Furthermore, in reviewing the remaining portions of the record, we do not find any documentation that the jury fee was paid. *See* TEX. R. CIV. P. 216(b)[14]; *see also*

---

[14] Texas Rule of Civil Procedure 216 provides as follows:

a.      Request. No jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than thirty days in advance.

*Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 n.1 (Tex. 1996) (noting that the time limitations apply with equal force to the application for jury trial and the payment of the jury fee); *Huddle v. Huddle*, 696 S.W.2d 895, 895 (Tex. 1985) (op. on reh'g) (per curiam). Thus, appellant has not satisfied the prerequisites for obtaining a jury trial on this issue.

As a result, the trial court conducted the hearing on appellee's motion to modify the geographic restriction.[15] As noted earlier, the trial court concluded that appellee had violated the original geographic restriction contained in the divorce decree and held her in contempt. Appellee was fined $500 and was ordered to pay $1,500 of appellant's attorney's fees, among other things. In addition, appellant received a child-support credit of $1,489.32 to compensate him for appellee's violations.

Because appellant has not directed us to any evidence demonstrating that he satisfied the prerequisites for requesting a jury trial, and because the trial court noted in its August 18, 2009 order that the parties had waived their rights to a jury trial, we cannot say that the trial court violated section 105.002 of the family code by addressing appellee's request to lift the geographic restriction. *See* TEX. FAM. CODE ANN. § 105.002. We overrule appellant's fourth issue.

## VI. APPELLANT'S ENFORCEMENT MOTION

In his fifth issue, appellant asserts that the trial court treated him unfairly and that

---

> b.  Jury Fee. Unless otherwise provided by law, a fee of ten dollars if in the district court and five dollars if in the county court must be deposited with the clerk of the court within the time for making a written request for a jury trial. The clerk shall promptly enter a notation of the payment of such fee upon the court's docket sheet.

TEX. R. CIV. P. 216. The trial court's docket sheet does not reflect that the jury fee was ever paid by appellant. *See id.* at R. 216(b). Furthermore, appellant has not filed a sworn statement in the trial court indicating his inability to pay the required jury fee. *See id.* at R. 217.

[15] In further support of our conclusion in this issue, the trial court, in its August 18, 2009 order, stated that the parties had waived their rights to a jury trial on this issue.

the trial court delayed his case, which "amplified the damage that Mrs. [Zapien] has done to the parent/child relationship." Appellant also complains that the trial court only awarded him seven days of access to the child when he had been denied ninety-seven days of access. Furthermore, appellant argues that the trial court treated him unfairly by not holding appellee responsible for all of his costs to visit the child in El Paso despite the trial court's finding that appellee had violated the geographic restriction contained in the divorce decree. As a result of these alleged inequities, appellant requests that we sustain this issue and award him ninety extra days of access to the child and $3,517 in costs associated with visiting his daughter in El Paso and $8,440 in attorney's fees. *See* TEX. FAM. CODE ANN. §§ 157.167(b), .168 (Vernon 2008).

## A.    Applicable Law

Section 157.168 of the family code provides that a party may be awarded additional periods of access to a child to compensate for the denial of court-ordered possession or access. *Id.* § 157.168(a). It is within the discretion of the trial court to determine whether to grant such an award; however, if the trial court chooses to grant the award, the additional periods of access or possession "must be of the same type and duration of the possession or access that was denied." *Id.* § 157.168(a)(1).

## B.    Discussion

On August 18, 2009, the trial court, after finding that appellee had violated the geographic restriction contained in the divorce decree and had, therefore, deprived appellant of access to his daughter, awarded appellant seven days of additional possession or access during either the Thanksgiving or Christmas holidays of 2009. The trial court's order specifies that appellee denied appellant access to the child repeatedly from July 2008 to July 2009. At the time in which appellee denied appellant access to the

28

child, the trial court's February 27, 2008 visitation order was in effect, which provided appellant with much more than seven days' access to the child. Because the trial court concluded that appellee had denied appellant access to the child and, because the trial court granted appellant additional access as compensation, the trial court was obligated under section 157.168 to provide appellant with access or possession "of the same type and duration of the possession or access that was denied." *See id.* Clearly, the trial court's award of one week of additional visitation with the child shortchanges appellant for the access and visitation he was denied by appellee from July 2008 to July 2009. *See id.* Appellant appears to be entitled to much more than one weeks' visitation in compensation for appellee's denial of access to the child. *See id.* As such, we conclude that the trial court erred in applying section 157.168 of the family code to compensate appellant for access and visitation denied to him by appellee. *See id.*

With respect to his contention that the trial court treated him unfairly, appellant baldly asserts that "[t]he judge [a visiting judge for the Hidalgo County Court at Law No. 1] clearly made up her mind without hearing all the facts." Appellant directs us to one page from the final hearing where the trial judge, after hearing the parties make the same arguments over and over again, inquired: "Is there anything that you feel needs to be reiterated or that I need to hear that may change my mind in the next five minutes . . .?" Based on this statement, appellant suggests that the trial court treated him unfairly. We disagree.

The record reflects that appellant repeatedly made the same arguments to the trial court, each time hoping for a different result. Furthermore, as indicated by the various orders entered by the trial court, appellant won on several issues he raised. Just because he did not win on every issue raised does not mean that the trial court treated him unfairly.

Moreover, appellant has not cited any legal authority supporting his claims. *See* TEX. R. APP. P. 38.1(i). Accordingly, in reviewing the record in its totality, we cannot say that appellant was treated unfairly or that the trial court was biased against appellant.

Regarding appellant's request for appellee to pay $3,517 in costs associated with his trips to El Paso to visit his daughter, appellant cites us to section 157.167 of the family code, which does not support his contention. *See* TEX. FAM. CODE ANN. § 157.167 (providing for the recovery of attorney's fees and *court costs* when the trial court finds that the respondent has failed to: (1) make child support payments; or (2) comply with the terms of an order providing for the possession of or access to a child). Moreover, appellant does not cite us to portions of the record, such as receipts or other documentary evidence, supporting his argument that the trial court should have awarded him the $3,517 in costs associated with his trips to El Paso. *See* TEX. R. APP. P. 38.1(i). Thus, we conclude that his request for the $3,517 in costs is inadequately briefed. *See id.* Additionally, appellant's argument that he is entitled to $8,440 in attorney's fees lacks merit because the trial court, in its August 18, 2009 order, ordered appellee to pay appellant $1,500 in attorney's fees, which would correspond to section 157.167(b)'s requirement that the respondent pay attorney's fees and costs if the trial court finds that they have failed to comply with a court order. *See* TEX. FAM. CODE ANN. § 157.167(b). Moreover, appellant has not directed us to any evidence in the record demonstrating his entitlement to attorney's fees in addition to those already awarded.

Based on the foregoing, we sustain appellant's fifth issue as it pertains to the trial court's award of access and visitation to the child under section 157.168 of the family code. *See id.* § 157.168. We overrule the remainder of appellant's fifth issue.

## VII. CONCLUSION

With respect to the trial court's award of access and visitation to appellant to compensate for appellee's denial of access from July 2008 to July 2009, we reverse and remand for the trial court to calculate the appropriate amount of access and visitation to which appellant is entitled under section 157.168 of the family code. *See id.* We affirm the remaining aspects of the trial court's orders.

ROGELIO VALDEZ
Chief Justice

Delivered and filed the
24th day of June, 2010.